### WIDOW and Heirs of JAMES MACKAY v. P. M. DILLON.

1. The treaty by which Louisiana was acquired, imposed only a political obligation upon the government of the U. S. to perfect the titles, rights and claims originating under the former government. The treaty itself did not, as in the case of the Florida purchase, operate as a confirmation. This political obligation, sacred as it is, cannot be enforced by the judicial tribunals.

2. When the government exercises its powers, and confirms the land to one claimant, it must necessarily be to the extinction of any more inchoate title in another. The oldest confirmation, like the oldest patent, must prevail, at least in ejectment.

3. The act of Congress of June 13th, 1812, confirmed the claim of the

MAY TERM,
1841.

Widow and
h'rs of James
Mackay
v.
P. M. Dillon.

inhabitants of St. Louis to the commons adjoining that town, and that act of confirmation embraced the commons as defined in the survey of 1806. Therefore, a party claiming under the inhabitants of St. Louis, must prevail over a party who claims under a title confirmed by the act of 4th July, 1836.

## Error to St. Charles Circuit Court.

### *Lawless for Plaintiffs.*

It will be contended on behalf of plaintiffs, that the court erred in instructing the jury that the claim of the inhabitants of the town of St. Louis was confirmed to the exclusion and extinction of the title of James Mackay.

It will be contended that the court did not err in excluding the sheriff's deed to Frederick Dent. It will also be contended that the circuit court did err in admitting the proceedings before the commissioners on the claim of commons, to be read in evidence against the plaintiffs.

As to the error of the court below in its instruction with reference to the city title, the plaintiffs will rely on the treaty of cession—the law of nations—the divers acts of congress from 1815, to 4th July, 1836, to show the validity and inviolability of the title of plaintiffs under James Mackay, their ancestor. The plaintiffs will rely on the act of 13th June, 1812, sec. 1, and on the *nature* of the claim and title to commons here set up, to show that that act did not, in terms or in spirit, confirm the claim of 14,000 acres, made by certain inhabitants, and at their request surveyed by Mackay in 1806. See Lawless v. Newman, 6 Mo. R. 279. As to the sheriff's deed to Frederick Dent, the plaintiffs will contend that it conveyed no land whatever to Dent; that it was totally void, because, among other reasons :

1st. Of the uncertainty of description. See 8th Johns. Rep. 520 ; 13 Johns. Rep. 537; ibid. 340; ibid. 37, 577.

2d. Because the executors of Mackay had no estate or interest in the land in question in their hands to be administered.

3d. That their testator, James Mackay, had no estate or interest in the land that could be conveyed by him, either as a legal estate or a trust estate, or right in equity to land, or

which could be the subject matter of the lien of a judgment against either him or his executors, at the date of the judgment rendered in favor of J. & B. Pratte, on which could be levied on or sold under execution.

*Gamble for Defendant in Error.*

1. That there was here a claim to commons, as originating under the Spanish government, presented before the proper tribunals of the American government for adjudication, and upon which the government of the United States itself passed, by the act of 13th June, 1812. 2d Story's Laws U. States, 1259.

2. That the claim to commons did not require that there should be any grant of commons in the sense in which the word grant is understood, when applied to the claim of an individual; but any dedication to public use, any user of the property as commons, any recognition of the existence of such right of common by the competent authority of the country, or acknowledgment of the existence of such commons, or reservation, for such use, is a good basis of such claim, under either common or Spanish law. 10 Peters, U. States v. *The City* of New Orleans; 12 Peters, Strother v. Lucas, in the notice to the opinion of the court.

3. That the claim for commons as made, was upon a recognition of the existence of commons under the Spanish government, by the lieutenant governor who signed and approved the regulations adopted in relation to the commons, by the Syndics of St. Louis; and whether the claim calls the act of the lieutenant governor a *decree*, or uses any other name, it is equally available.

4. That the right of common was under the Spanish government at least as meritorious as the claim of the land by an individual; and if it has been confirmed by the gov't. of U. S. its merit has been abundantly recognised.

5. That the claim to common as filed before the board, with the survey made by Mackay, was a claim to all the land within the exterior boundary of that survey, notwithstanding the pretensions of Mackay and others were laid down.

MAY TERM, 1841.

Widow and h'rs of James Mackay,

v.

P. M. Dillon.

The correctness of this position is shown by examining the claim for a specific quantity of land, and the survey whose exterior boundary embraces that quantity.

6. That the confirmation by the act of 13th June, 1812, was a confirmation of the claim as exhibited before the board.

7. That such confirmation was equivalent to, and was a grant. Strother v. Lucas, above.

8. That such confirmation, made by act of congress, being a valid title to support and defend actions of ejectment, is a better legal title than any younger confirmation, whether by act of congress or otherwise. See statute upon action of ejectment.

9. That if there had been any pretension to the land remaining in Mackay, after act of 13th June, 1812, that pretension was utterly extinguished by force of the act of 26th May, 1824. 3 Story, 1959, secs. 5 & 7; and the title of commons had no shadow upon it.

10. That the fact of confirmation under act of 4 July, 1836, gives no authority to courts or individuals, to draw in question the correctness of the action of the sovereignty in confirming by act of 13 June, 1812.

### Opinion of the Court by Napton, Judge.

This was an action of ejectment brought by the plaintiffs to recover a tract of land lying south of the city of St. Louis.

The plaintiff claimed title under a concession to him of about two hundred arpens, by metes and bounds, made by Charles Dehault Delassus in 1799; a survey made by Soulard of 288 arpens, in 1802; reported for confirmation by the last board of commissioners, and confirmed by the act of July 4th, 1836.

The first board of commissioners expressed an unfavorable opinion of this claim, intimating that it was ante dated. In 1813, the recorder confirmed 30 arpens of the claim, being all not included within the limits, or supposed limits of

the commons; that being abandoned by Mackay's agent. In 1833, the last board of commissioners, after an examination of the claim and testimony relating thereto, pronounce it a good one, and recommend it for confirmation, which was accordingly effected by the act July 4, 1836.

Two separate and distinct titles were relied on in defence. The defendant first claimed under a judgment and execution against the executor and executrix of James Mackay, and a sheriff's sale and deed.

Secondly, defendant claimed under the confirmation of the commons of the town of St. Louis, by act of 13 June, 1812, and conveyance from the city authorities of St. Louis.

The title to the commons was as follows:—A claim for 4293 arpens, situate adjoining the town of St. Louis, known by the name of the St. Louis commons, and said to have been granted by a decree of the Lieut. Governor Cruzat, in 1782, was filed in the office of the recorder. At the same time was filed a document containing the proceedings of certain inhabitants of St. Louis, for the appointment of Syndics, who had authority to regulate the police of the village and the inclosure of its commons. These Syndics, on the 22d Sept. 1782, with the approbation of the lieut. governor, proceeded to establish certain regulations concerning the enclosure of the commons, and these regulations were signed by the said Syndics, and the lieutenant governor *himself*.

A survey of the common was made by James Mackay, in 1806, at the request of the principal inhabitants; in the notes of which survey, Mackay states it to contain 4293 arpens; and that, by the request of the inhabitants, he had marked down the *pretensions* of six individuals to lands within the commons, including his own.

In 1806, the claim was submitted to the board, and they reported it to be equitable under the Spanish usages. In 1812, a majority of the commissioners rejected the claim. On the 13th June, 1812, the act of congress was passed, by which the claim of St. Louis, and several other villages to commons, was supposed to be confirmed.

Evidence was taken before the commissioners, and also read on the trial in the circuit court, conducing to show the

user of these commons for many years prior to the change of government in 1804.

The plaintiff below applied to the court for the following instructions, the first of which was given, and others refused:

1. That the sheriff's deed, and the proceedings in the case of J. & B. Pratte, against Mackay's executors, be excluded.

2. That Mackay's survey of commons, preserving Mackay's claim on the n. east part thereof, is conclusive that the claim of commons did not extend over Mackay's claim, as between those claiming the common and his heirs.

3. That Mackay's survey of commons, including his claim, is good evidence to the jury that the claim of commons did not extend over, and cover Mackay's claim.

4. That the deed from the city to Dent, conveyed no title under which the defendant can justify in this action.

At the instance of the defendant, the court gave the following instruction:

"That the claim of the inhabitants of the town of St. Louis to commons, as exhibited upon the copy of the claim given in evidence, was confirmed by the act of congress of the 13th June, 1812, to the inhabitants of said town according to the claim, and that the title to the land so confirmed, is a vested title against the title of the plaintiff under the confirmation of the act of congress of the 4th July, 1836."

This instruction was excepted to by plaintiff, and the jury found a verdict for defendant.

The title of the defendant under the sheriff's deed, having been excluded by the court below, was not therefore discussed at the bar, and will not be noticed by the court. The title under the commons will alone be considered.

If it were conceded, that the act of 13th June, 1812, confirmed the claim of the inhabitants of St. Louis to the commons, as exhibited before the board of commissioners, there would be, I apprehend, but little room to question the propriety of the instruction given by the circuit court.

It appears to be well settled, that the treaty by which Louisiana was acquired, imposed only a political obligation upon this government to perfect the titles, rights and claims

<div style="margin">Widow and h'rs of James Mackay, v. P M. Dillon.</div>

<div style="margin">The treaty by which La. was acquired, imposed only a political ob-</div>

Widow and h'rs of James Mackay, v. P. M. Dillon.

originating under the former government. The treaty itself did not, as in the case of the Florida purchase, operate as a confirmation. This political obligation, sacred as it is, cannot be enforced by any action of the judicial tribunals. The legislation of congress, from 1804 to the present day on this subject, is obviously based upon this supposition. They have established, from time to time, tribunals to investigate these claims, and from time to time have confirmed such as they thought just, and rejected such as were supposed to be unfounded. They have afforded every facility to claimants, and seemed anxious to retain the title themselves no longer than the conflicting rights of others could be examined and decided.

The federal government, being unable to confirm the same land to two adverse claimants, must then, to some extent, determine between the conflicting titles.

Each claimant depends upon the justice or comity of the present government; and when the government exercises its powers, and confirms the land to one, it must necessarily be to the extinction of any mere inchoate title in the other. The oldest confirmation, like the oldest patent, must prevail, at least in an action of ejectment.

If, therefore, the act of 13th June, 1812, confirmed the claim of the inhabitants of St. Louis to 4293 arpens of commons, that confirmation must prevail over the confirmation to Mackay, in 1836, whatever may be the comparative merits of their respective claims under the Spanish government, except the interposition of this government was unnecessary to perfect the titles.

The strength of the defendant's title must rest on the supposed confirmation of the commons, by the act 13 June, 1812. The proper construction of that act presents the only difficulty in this case.

That the phrase " rights, titles and claims," implies something more than grants or concessions, and will embrace such claims as rest on mere inhabitation, cultivation, and the usages and customs of the country, is distinctly declared by the supreme court of the United States in various decisions, and particularly reiterated in the case of Lucas v. Strother,

2

ligation upon the gov. of the U. S. to perfect the titles, rights and claims originating under the former gov't. The treaty itself did not, as in the case of the Florida purchase, operate as a confirmation. This political obligation, sacred as it is, cannot be enforced by the judic'l tribunals. When the government exercises its powers, and confirms the land to one claimant, it must necessarily be to the extinction of any mere inchoate title in another. The oldest confirmation, like the oldest patent, must prevail, at least in ejectment.

(12 Peters.)   The existence of a commons in St. Louis, is clearly ascertained, as far back as 1782, when certain regulations were made by the Syndics, in conjunction with, and under the direction of the lieut. governor.   The precise limits of the commons at this time were not so well established. From the testimony of the old inhabitants, as preserved in the office of the recorder, and submitted to the jury who tried this case, it may at least be inferred, that from time to time the common was enlarged, as the increase of population required, and it was probably some years after the date of the regulations of Cruzat and the Syndics, that it reached the extent claimed in 1806.   There is, however, abundant testimony that the boundary claimed in 1806 had been established before the transfer in 1804, though no survey had been made.

A mere claim, unsupported by any shadow or pretence of right, is clearly not such a claim as any act of congress could confirm.   The force of the term confirmation, of itself, implies some sort of a title in previous existence.   Whilst the word claim could not be justly interpreted in so broad sense as this.   Yet neither is it to be so restricted as to exclude every thing which the previous words " rights and *titles* " might embrace.   Claims are doubtless *mentioned*, in order that the act might be sufficiently large to embrace every species of proprietary interest set up against the government, whether founded on concessions, grants, uses, or any other inchoate title by which, under the laws and customs of the Spanish government, property could be severed from the King's domain, and equitable titles created.

The existence of a commons adjoining the village of St. Louis, of some extent, since the first establishment of a French post there, is undeniable.   All the witnesses examined before the board concur on this point.   The act of 1812, confirmed the claim of the inhabitants to commons; and the inquiry is, to what extent did that confirmation reach.   Did it embrace the commons as they existed under Cruzat's administration, or as defined in 1806 by Mackay, and submitted to the board and recorder, and rejected by the majority of the board ?   The *claim* was confirmed, and I

confess it is difficult to perceive how any other claim could have been contemplated than the claim to 4293 arpens, which had been urged upon their agents in this territory, and preserved in the official records of the government.

The act of 1812 confirms the claims to town lots, out lots, common field lots, and commons, to the claimants, according to their several right or rights in common thereto." It is supposed that this last clause is proof conclusive that only such claims as were founded on *right* were designed to be confirmed. To this interpretation I have no objection, as it may be fairly presumed, in justice to our national legislature, that unjust claims were not intended to be confirmed. But what tribunal can look behind the confirmation of congress, and investigate the justice of their grants. Here was an exercise of political power by the federal government, in the fulfilment of the treaty obligation; and the judicial tribunals of the country cannot inquire whether this power has been judiciously and honestly exercised. Congress may have confirmed the least equitable title; but having done so, that title cannot be disturbed.

There is one view of this subject which appears to me *strongly* to corroborate the idea, that the act of 1812 was designed to confirm the claim to the specific quantity of land, asked for as commons by the inhabitants of St. Louis. If it were the design of congress to limit their confirmation to only so much land as might, upon judicial investigation, prove to be justly claimed of the Spanish government, either by user or grant, it seems very strange that a special act, or special provisions in the same act, were not framed to meet such a case. The words of the act which was passed, are certainly general enough to embrace the whole claim as it was on file in the recorder's office, and the United States must therefore have intended to part with all their title and claim to this tract of land.

I conclude, then, that the defendant claiming under the inhabitants of St. Louis, whose claim was confirmed 13th June, 1812, must prevail over the plaintiff who claims under a title which was not perfected until 1836.

Judgment affirmed.

Widow and h'rs of James Mackay,
v.
P. M. Dillon.

The act of congress of June 13,1812, confirmed the claim of the inhabitants of St. Louis to the commons adjoining that town, & that act of confirmation embraced the commons as defined in the survey of 1806. Therefore, a party claiming under the inhabitants of St. Louis, must prevail over a party who claims under a title not confirmed by the act of 4th July, 1836.