## COOLEY vs. RANKIN.

1. A deed is valid though not acknowledged, and its want of acknowledgment does not constitute a defect of title, so as to constitute a defence to the payment of the purchase money for the land conveyed.

2. A party may purchase land under a sale on a mortgage to himself to secure a debt due to the mortgagee.

## APPEAL from Jefferson Circuit Court.

GARLAND & KING, *for Appellant.*

1. Bryant has no legal title to the 148 acres of land sold to Horine.
2. A trustee cannot sell trust property and purchase it himself.
.3. The administrators of Bryant changed the nature of the contract, overreached the appellant, defrauded him, and conveyed him no specific title for the land he contracted to purchase of said Bryant. 4 Howard's R., p. 503.
4. To the 89 acres of the land sold by Paul Kingston and wife to said Bryant, the title is not good, the deed not being properly authenticated. Territorial laws, p. 422.
5. Rankin could not purchase of sheriff Hammond the Horine tract of 148 acres, because he had said land sold as administrator of Bryant, and being a trustee, he could not sell the land and buy it himself. Howard's R., 4 vol., p. 503.
6. The title to the land is bad; it is not a marketable title for the appellant; it is no title whatever; this alone authorizes a recision, as the appellant has no warranty on Bryant's estate. 7 Mo. R., 524; Barton vs. Rector.
7. The bill charges fraud in the most direct and positive manner, and is not denied in the answer, and stands admitted. 1 J. J. Mar., 215; 2 Pirtle's Digest, p. 256.

FRISSELL, *for Appellee.*

1. The plaintiff has been in quiet possession of the premises under the contract with Bryant, and the deed of his administrators, for nearly fourteen years, and has failed to show an eviction, or any serious defect in Bryant's title. Bumpas vs. Platner, 1 J. C. R., 212; Abbott vs. Allen, 2 J. C. R., 519; 1 Fonblanque, 270.
2. The plaintiff has failed to show any fraud. 2 J. C. R., 256; Sess. Acts. 1847, p. 95, sec. 8.
3. All the defect he has shown in the title to the land, was cured before bill filed.

NAPTON J., *delivered the opinion of the Court.*

This was a bill in chancery to enjoin a judgment at law, upon the foreclosure of a mortgage, against the complainant, Cooley, for about three thousand dollars. The administrators of David Bryant obtained a judgment against Cooley, in 1846, and an injunction was granted by the Cir-

cuit Court, in that year; but at the hearing, the injunction was dissolved and the bill dismissed.

From the bill, answers and exhibits, the following facts appeared undisputed.

On the 19th of February, 1834, David Bryant and Lawson Cooley entered into an agreement, by which Bryant sold to Cooley his farm on Sandy Creek, including all the improvements. Cooley agreed to pay on the 10th March, $1500; and on the first October, $500; and on the first March, 1835, $875; and on the first March, 1836, $875, with six per cent. on the several instalments, from the 10th March until paid. It was agreed by Bryant, that on the payment of the $500 due on the first October, "he would make over and convey by a good and sufficient deed in fee simple, with a warranty," the land thus sold. The farm was supposed to contain about 547 acres. Cooley further agreed to give Bryant a mortgage to secure the payment of the remaining instalments.

Cooley went into possession under the agreement. Before the instalment of $500 was due, upon the payment of which a deed was to be made, Bryant died. C. S. Rankin and Eve Bryant became his administrators.

In 1836, suit was brought upon this agreement, all the instalments being due. This suit was compromised on the following terms: The administrators agreed to withdraw the suit, provided Cooley would pay $1000, and give his notes for the balance, bearing ten per cent. interest. It was further agreed, that a deed should be executed by the administrators, to Cooley, under an order of Court, and that Cooley should execute a mortgage to secure the remaining payments. These stipulations were carried into effect by both parties. Cooley applied to the county court for a deed, and it was ordered, and executed in accordance with the provisions of the act. This deed contained a covenant of warranty binding the administrators so far as assets should come to hand. Cooley paid the $1000, and interest upon the remainder at six per cent., up to the 25th April, 1837, and he executed his notes for the balance, one for $834 46 1-4, payable in fifteen months, and the other for the same sum, payable in two years, both bearing ten per cent. interest. Cooley also executed a mortgage to secure the payment of these notes.

In 1845, the administrators foreclosed this mortgage; and in 1846, before the writ was executed, this bill was filed.

The bill prayed an injunction against the collection of the money due on the mortgage; that the contract be rescinded, and that the purchase money, already paid, should be refunded.

The grounds upon which this relief was asked, were: 1, That Bryant was guilty of fraud, in representing to the complainant, at the date of the contract above set forth, that he had a good title to the premises he contracted to convey; 2, that the title to a portion of the land was defective; 3, that the administrators overreached the complainant in their compromise with him, by exacting ten per cent. interest; and, 4, because the deed executed by the administrators did not contain such a warranty as under the original contract with Bryant the complainant had a right to expect and demand.

In relation to the fraud, there was no evidence, and it was denied by the answers.

The objections to the title, as it appears from the bill and exhibits, were these: About 148 acres of the land was conveyed by Bryant, in 1816, to George Horine. In 1828, Horine conveyed this land to Bryant, to secure the payment of about $250; the deed gave a power of sale to Bryant, upon a failure of payment. In May, 1834, David Bryant, as trustee, made a conveyance to himself as purchaser at the sale, recited to have been made under the mortgage or deed of trust executed in 1828. In 1838, the administrators of David Bryant instituted proceedings in the Circuit Court of Jefferson county, against the administrators and heirs of George Horine, for the foreclosure of this mortgage. A judgment of foreclosure was obtained, and an order of sale made. C. S. Rankin became the purchaser, and on the 28th May, 1845, said Rankin conveyed all his interest to the complainant.

It appears upon the record, that previous to the hearing, the widow of George Horine was dead.

Another objection to the title of another portion of the land was, that the deed executed by Paul Kingston and wife to David Bryant, was not properly acknowledged. The deed was made in 1816, and was acknowledged before a justice of the peace of St. Clair county, in the Territory of Illinois, and authenticated under the seal of the Territory, by the Secretary of the Territory. The deed, with its acknowledgments and authentication, was recorded in St. Louis county in 1817.

In relation to the charge of fraud in the administrators in their contract with the complainant in 1836, there was no evidence. The answer stated, that the assets of the estate amounted to $20,000.

There is a charge in the bill, and some evidence in relation to it, that the complainant lost an opportunity of making an advantageous sale of the farm by reason of the supposed defects in the title. The answer denies, that the title constituted the real obstacle to the completion of this

bargain. The evidence on this point, it is not deemed material to state. This is an application on the part of a purchaser of land to be relieved from the payment of the purchase money. The grounds upon which the application is based, are, fraud on the part of the vendor; the insufficiency of the deed executed, as a compliance with the original contract; a partial failure of consideration, by reason of the want of title to a portion of the land; and improper and oppressive conduct by the defendants, who are the personal representatives of the vendor.

The bill charges, that the vendor, Bryant, committed "a grievous and notorious fraud, to wit: in representing that he was the owner of all the land contracted to be conveyed, and that he had a good title to the same; and the complainant avers that he, relying on this statement, entered into said contract, and that the said Bryant, to conceal from the complainant his meditated fraud, agreed to make him a conveyance by a good and sufficient deed in fee simple, with a warranty."

The complainant then avers, that in truth and in fact, said Bryant did not own all of said land, and proceeds to show wherein the title was defective.

It is quite obvious, that although fraud is charged in general terms, the facts stated, and which are alledged to constitute the fraud, do not of themselves amount to fraud. The vendor is alledged to be guilty of fraud, to wit, in representing that he had title, when he had none. If this be fraud, then every breach of warranty must be attended with fraud. The sufficiency of a title to land, will frequently depend upon questions of law, about which the most learned may differ, and it would be strange, if men who have not made the law their profession, were exempt from errors in their opinions and representations on such a subject. There is no principle of equity which holds men responsible for such representations, if made in good faith.

But if the charge in the bill be regarded as a sufficient allegation of fraud, there is no proof to sustain it. There is no proof on the subject in the record. The only testimony read at the hearing, was in relation to an alledged loss of a bargain by Cooley, in the sale of these lands. It has indeed been said in the argument at the bar, that the answers do not deny the charge of fraud. The answer of the administrators says, that if there was any fraud, it was not on the part of Bryant or themselves. If this phraseology be considered as objectionable, it must be recollected, that the defendants were not parties to the transaction, but were the representatives of the vendor; and, at all events, the answer is quite as explicit as the bill.

We may assume, then, that fraud is altogether out of this case. The bill does not distinctly charge it; the answers deny it; there is no proof on the subject, and the whole history of the transaction, as developed by the bill and answers, repels all presumption or suspicion of fraud.

Another ground upon which the complainant relies, is the supposed insufficiency of the covenants contained in the deed executed by the administrators. A complete answer to this is, that the complainant himself applied to the County Court for this deed, and accepted it, and retained possession of the land under it for several years, without complaint. It is not pretended, that the complainant was under duress, or labored under any incapacity to make his own contracts. It is alledged by him, that he was ignorant of the imperfections of an instrument executed in this mode, at the time he made the application, but it was his duty, as it was his interest, to inform himself in relation to this matter, and his failure to do so constitutes no just cause for the interference of a court of equity.

In what respects, and to what extent, a deed procured under these statutory provisions, would be less advantageous to the vendee, than the deed of the vendor himself, we are not called upon to determine. These are questions which the purchaser in this case has determined for himself. The statute declares that the deed thus executed by the administrators, under the direction of the court, shall be as effectual, in every respect, as though it was executed by the vendor himself. The saving clause in the decree and the deed, allows the infant heirs of the vendor a specified period, within which the deed may be set aside *for fraud or otherwise.* What causes may be designed to be included in this reservation, we are not prepared to say; but it may be safely asserted, that no apprehensions need be entertained that the deed could be set aside because of any defects of title in the vendor—the only matter now complained of. It is said that the lands of the deceased are not bound by this warranty; but *his assets* are, and how would the warranty of the deceased himself have been preferable in this respect? As to the effect of covenants binding the heir, the question cannot be of any practical importance here, where lands of a deceased person are as completely within the ultimate reach of the creditor as personal property.

These suggestions are, however, outside of the case. It is sufficient that the complainant applied for and accepted this deed, and if it is not such a deed as he had a right under his contract, to demand, it is his own fault.

It is also made a serious charge against the administrators, that, *in the*

compromise, which was made with the complainant in 1836, they took his notes for the balance of the purchase money then due, bearing interest at the rate of ten per cent. This conduct is described in the bill as oppressive and fraudulent; for what reason, it is not easy to conjecture. The instalments unpaid were all due in 1836, and could have been legally exacted from the complainant. The administrators gave him further time, and required ten per cent. as a consideration for such forbearance. The law unquestionably allowed this rate of interest, if it did not imperatively require it. It seems strange that any complaint should be made of this compromise, when it appears from the bill as well as the answers, that it was agreed upon voluntarily on the part of Cooley, and without any undue solicitation or any misrepresentations on the part of the defendants. The complainant, indeed, intimates, that he consented to these terms, under a mistaken opinion of his rights; without any knowledge that the title was defective, and with a belief that the deed executed under the order of the County Court would secure him as effectually as a deed executed by Bryant himself. But it does not appear, of what rights the complainant was ignorant; whether he was mistaken upon a matter of fact or of law.

The charges of fraud and oppression, then, both against Bryant, the original vendor, and his administrators, the present defendants, may be dismissed without further remark. The case stands simply in this attitude. The vendee asks a recision of the contract and a return of the purchase money, because of alledged defects in the title. No one has set up any other title, much less, has there been any eviction. A deed with a covenant of warranty, and such other covenants as the statute directs, has been made and accepted. The vendee has gone into possession, and retained that possession, undisturbed for a period of fourteen years. Under these circumstances, can a doubt be entertained, that the complainant is without a shadow of claim to the assistance of a court of equity?

The case of Barton's adm'r vs. Rector (7 Mo. Rep. 12,) has been cited. That case is, in almost every feature, distinguishable from this. There the contract was not executed; no deed had been made, and no possession taken. Here a deed has been made, and a possession of fourteen years held under it. In that case the vendor *admitted* in his answer that he had no title, and that he was entirely insolvent. Here the defendants insist that the title is good, and there is no pretence of insolvency. The assets of the estate are said to be $20,000, and the original purchase money was only $3,750. The cases are totally dissimilar.

In relation to the alledged defects of title, it is sufficient to say, that it is not within the province of a court of equity to decide upon legal titles. There are cases, in which questions of this nature have arisen incidentally and collaterally, but in general, the court has no power to try titles. How can a court determine the validity of a title, which neither the alledged owner, nor any one else, is willing to assert? How is the title of a stranger to be tried in his absence, and when it does not appear that he will ever assert it? The principle applicable to such cases is obvious. The title must first be tried at law; there must be an eviction, before a court of equity can interfere.

Since writing the above, our attention has been directed to an act of the Legislature, approved March 27th, 1845, entitled "An act to regulate injunctions in certain cases." This statute was not alluded to in the discussion of this case at the bar, on either side, and until now, it was not known that any material changes had been made in the practice of chancery courts upon this branch of equity. This act provides, that where the title *has failed*, or was *wholly defective*, to either the whole or a part of the land, and the defects continue to exist, at the time of the application to the court, the injunction shall be granted. It is not clear, that the statute intends to apply to mere speculative defects of title—defects, which may, or may not, according to circumstances, prove detrimental to the purchaser. What must be the evidence of a failure of title to justify the interference of the court? Heretofore, an eviction was thought necessary, except in cases where some other circumstance, such as insolvency, laid a foundation for equitable interposition. Will partial defects of title, such as time may heal, be sufficient to authorize the court to set aside the contract? We shall not undertake to answer these questions, because it is not necessary in this case. Our opinion is, that Cooley's title is neither defective, nor has failed.

The objections to the title are threefold; first, that the 148 acres conveyed by Bryant to Horine, in 1816, has never been re-conveyed; second, that Mrs. Horine's right of dower has never been extinguished to this part of the tract; and third, that the deed from Paul Kingston and wife was not properly acknowledged and recorded.

The last objection cannot be available upon the most liberal construction of the statate. The deed was undoubtedly good between the parties, although not acknowledged or recorded at all, and there is no evidence that Kingston ever made another deed to any other person. Whether Kingston, the grantor, was alive at the hearing or not, does not appear; but if dead, and no other deed had ever been executed by him, the title

could not be attacked. If it appeared that Kingston was still alive, it would then have been in the power of the complainant to have had the deed properly acknowledged.

As to the title to the 148 acres conveyed in 1816, to Horine, we see no objections to its validity. Admitting the deed from Bryant to himself to be void, the subsequent foreclosure of the mortgage by the court, and the sale and conveyance to C. Rankin, conveyed the title. The principle of equity which prohibits a person from uniting the opposite characters of buyer and seller, cannot apply in the present case. To extend the doctrine to a case like this, would be to hold substantially that a creditor could not buy property at a sale under his own execution. Where there is actual fraud, the interposition of legal proceedings will not help the fraudulent purchaser; but there is no pretence of actual fraud on the part of Rankin. On the contrary, he purchased in good faith, and to enable him to execute more satisfactorily the obligations of Bryant.

In relation to the dower of Mrs. Horine, it is sufficient, that she was dead before the injunction was dissolved. Whether her representatives had any right of action growing out of her dower interest, is a question not material for us to decide, for if such a right did exist, it was certainly no incumbrance upon the land.

Judge SCOTT concurring, the decree of the Circuit Court is affirmed. McBRIDE, J. did not sit.