*Gholson, J.
This case presents a conflict between two titles, both purporting to emanate from the government. The plaintiff claims under a patent from the United States. The defendant claims under a deed from the State of Ohio, which has been *77 confirmed, first by an act of Congress, and afterward by an act. of the legislature of the state. Either title being out of the way, the other would be regarded as good and sufficient.
"Without taking into view the question of priority in point of time, which would involve the consideration whether the confirmation is to be regarded as the beginning of the title of the defendant, or whether it may be regarded as relating back to the deed, and rendering it operative and effective as a legal conveyance from-its date, it will be assumed that the plaintiff holds the elder title, and the-inquiry be made, whether it can be questioned.
The principles upon this subject appear to be well settled. The-rule in a court of law is, that while a patent possesses the highest, verity and can not be contradicted or explained by parol, yet if it has been fraudulently obtained, or issued against the law, it maybe avoided. “It would be a most dangerous principle to hold, that a patent should carry the legal title, though obtained fraudulently or against law.” Stoddard v. Chambers, 2 How. 281-318. The fraud here intended, is such as that of which a court of law can properly take cognizance, and may not reach the classes of constructive fraud properly cognizable in a court of equity. But it is equally clear that a patent furnishes no protection from an inquiry into such frauds in the proper tribunal.
In view of such an inquiry it has been said : “ The laws for the sale of public lands provide many guards to secure the regularity of grants, to protect the incipient rights of individuals, and also to protect the state from imposition. Officers are appointed to superintend the business; and rules are framed prescribing their duties. These rules are, in general, directory; and when all the proceedings are ^completed by a patent issued by the authority of the state, a compliance with these rules is presupposed. That, every prerequisite has been performed, is an inference properly deducible, and which every man has a right to draw from the-existence of the grant itself. It would, therefore, be extremely unreasonable to avoid a grant, in any event, for irregularities in the conduct of those who are appointed by the government to-supervise the progressive course of a title from its commencement to its consummation in a patent. But there are some things so-essential to the validity of the contract, that "the great principle of justice and of law would be violated, did there not exist some tribunal to which an injured party might appeal, and in which the- *78 means by which an elder title was acquired might be examined. In general, a court of equity appears to bo a tribunal better adapted to this object than a court of law.” Polk’s Lessee v. Wendel, 9 Cranch, 87; Patterson v. Winn, 11 Wheat. 380.
It is not sufficient to escape the application of these principles that the plaintiff should show that the deed of the state convejmd no legal title. Ho must show that neither the state nor its grantee had any right to the land which persons dealing.with the United States were bound to respect. If the plaintiff knowingly and intentionally, as the facts show, disregarded the position of the defendant .in respect of the property, his course can be sustained only upon the ground that such position would give no claim for relief, ■either by suit in case of individuals, or by an appeal to legislative justice. For if individual owners were placed in the position of ■the two governments, and under analogous circumstances, a claimant under them would be entitled to relief from one acquiring the title, as it was acquired by the plaintiff, then those governments might very properly do voluntarily what individuals might be compelled to do, and the plaintiff would have no just ground of -complaint.
*A right which is imperfect from a failure to comply with some requisition as to form, is certainly capable of confirmation by legislation. And such has been the practice of Congress. Lessee of Pollard’s Heirs v. Kibbe, 14 Peters, 353, 365; 7 Mo. 7.
There is a well-known distinction between a defect of power and the defective execution of power. As to the former, there can be no relief; as to the latter, generally, there can. Of the different -grants of lands to the state, taking that most favorable to the view of the plaintiff, the one contained in the 5th section of the act of May 24, 1828, contains clear words of immediate grant. The words are: “ That there be and are hereby granted to the State of Ohio, five hundred thousand acres of lands owned by the United States, within said state, to be selected as hereinafter directed,” etc. That these words constitute a present grant and only require an identification of the lands granted, is clear, both upon reason and. authority. Lessieur v. Price, 12 How. 59-76.
It is a rule of construction that “ an interest, estate, or benefit given, conveyed, or bestowed, in one part of any written instrument, by terms entirely clear and unambiguous, and as to which, -if standing alone, there could be no doubt whatever, can not be *79 defeated by a construction given to any other part of the same instrument, unless the terms found in such other part are equally decisive and clear. Thornhill v. Hall, 2 Cl. & Fin. 22-36.
Having this rule in view, is there anything in the 6th section of the same act which shows that the steps to be taken in the selection of the lands are not directory, but are precedent to the grant, and that there is really no grant upon which any right can be founded until those steps shall have been taken ? By the latter part of the 6th section, it is provided that the lands selected shall, “ by the governor of said state, be reported to the office of the register of the district in which the land lies, and no land shall be deemed to fee so selected till such report be made, *and the lands so seleeted shall be granted by the United States to the State of Ohio.” The object in view in the first part of this proviso, was, obviously, the giving information to the proper officer, so that the selections might not interfere with any other disposition of the public lands. And if the report were delayed, and other rights were acquired in good faith, without notice, a strong ground might be presented to prefer those rights. As to the other part of the proviso, it may be very fairly construed, so as to give their proper effect to the former words of'present grant, as if it read, “the lands so selected shall be those granted by the United States to the State of Ohio.” In no view of the grammatical construction of the sentence can the furnishing evidence of the grant be construed into a condition precedent to the taking a right or interest in the lands. In the last clause there are no words of condition. If the selection has been made, the grant either becomes perfect, of there is a perfect right to a grant. The whole stress of the argument must therefore be thrown, in view of the point under consideration, upon the necessity of a selection as a condition precedent to the grant. And this construction, as has been shown, the strong words of present grant will not permit.
In truth, the argument to show the necessity of a location in the mode prescribed as to the entering of lands by individuals, which is made in view of the grant of lands by the act of April 2,1830, is equally cogent with that as to the necessity of a selection in' the precise mode indicated in section 6 of the act of 1828. Neither can be regarded as essential to the right, but only as directory. Precisely the same objection was taken in the case of Lessieur v. Price, 12 How. 59-76, as to a grant to the State of Missouri. It was- *80 there claimed “that the location was void because there never was any communication made by any person, for the State of Missouri, to any officer of the United States having power to grant an application for, or allow any location of said lands; and that *such location should have been entered and recorded in the register’s office of the local land district.” But this proposition was not sustained. It was said to be a present grant, wanting only identity to make it perfect, and that the legislature was vested with full power to select and locate the land, and the particular mode adopted in that case was held sufficient.
It may be said that in this case there is nothing to show what mode of selection was adopted. But, we think, if there was power in the state to make the grant, which we have endeavored to show, we are bound to presume, from the grant itself, and especially in view of its confirmation by both of the governments interested, that a proper and sufficient mode was adopted. That the prerequisites to the grant will be presumed, has already been shown by the remarks quoted from the case of Polk’s Lessee v. Wendel, 9 Cranch, 87. The same principle is more fully stated in another case. United States v. Arredondo, 6 Pet. 691, 727, 728. The deed or grant of the state, then, as said in that case, becomes evidence of the facts it recites and declares, leading to and showing the foundation of grant, and of all other facts legally inferable from what, is so apparent on its face.
To the effect of this presumption and the right which it necessarily shows in the defendant, the plaintiff does not stand in a position to offer any objection. If the defendant, in justice and right, has a claim to the land, the removal of any formal impediments-to its assertion can not be said to infringe any vested right of the plaintiff. If an interest or claim exist which it would be proper either for a court to protect, or for legislative power to confirm, no effort, knowingly and intentionally, to defeat that interest or claim, to the manifest injury of its possessor, can shelter itself under any form that will make it a vested right. There can be, it has been strongly observed, in view of such cases, no vested right to do wrong. Foster v. The Essex Bank, 16 Mass. 245.
*There must be a judgment in this case for the defendant, quieting his title to the land.
Brinkerhoff, C. J., and Scott, Sutliff and Peck, JJ., concurred.