KEY v. JENNINGS *et al., Appellants.*

1. **Land Entries**: RESULTING TRUSTS. If one owning a government land-warrant issued in the name of another, and not assigned by him, enters land under the warrant for himself, but for want of the assignment makes the entry in the name of the other, the latter takes the legal title to the land as trustee for the former.

2. **Adverse Possession.** When adverse possession is such that it may be presumed that the true owner had knowledge of it, and has acquiesced in it, or, if the indications of the claim and possession are so patent and so open that, if he remained in ignorance, it must have been his own fault, he will be barred, provided that the adverse possession has been continued for the requisite length of time.

3. **Rescission for Misrepresentation.** Erroneous representations as to the title to land made by a vendor without fraud pending the negotiation for a sale, will not authorize a rescission of the contract, if the vendee has received a warranty deed, and has taken and continued to retain possession without opposition.

4. **Rescission for Misdescription.** Misdescription of land in a deed will not authorize rescission of the contract of sale, when it appears that the vendee has been put into possession of the very land which he intended to buy and the vendor intended to sell, and that he has for several years retained undisputed possession; nor when the vendor offers to deliver a deed correctly describing the land.

5. **Rescission must be claimed in a Reasonable Time.** When a vendee of land is entitled to have his purchase rescinded by reason of defects in the title to the land, he must exercise his right within at least a reasonable time after discovering the defects.

6. **Rescission**: PARTIAL FAILURE OF TITLE. A purchase was made of a farm containing 1,269 acres, as to two 40 acre tracts of which there was a failure of title, but it appeared that these tracts were on the outer sides of the farm, and did not destroy its contiguity, or form any special inducements to the purchase; *Held,* that as the substance of the contract of purchase was executed without these tracts,

the purchaser's remedy for the failure of title thereto was not the rescission of the contract, but a claim for compensation against the solvent vendor

*Appeal from Warren Circuit Court.*—HON. W. W. EDWARDS, Judge.

*Wm. A. Alexander* and *Lackland & Broadhead* for appellants.

1. Fraud is never presumed; it must be proved by him who asserts it. 1 Story's Eq., Sec. 190. There is no particle of evidence of either actual or constructive fraud

2. A manifest distinction to be traced through all the cases between executory contracts and those which have been executed. In the latter class, where a deed has been made, and possession given, there must be an eviction at law under paramount title, before the court of chancery will interfere, and the vendor, selling in good faith, is not responsible for his title beyond his covenants. *Barton v. Rector,* 7 Mo. 528; *Edington v. Nix,* 49 Mo. 134.

3. The settled doctrine of this court is, that where a party buys a tract of land, receives a deed with a warranty, and goes into possession, he cannot defend against a note given for the purchase money upon the mere ground of speculative defects of title, unless there have been false and fraudulent representations made by him in regard to this title. *Mitchell v. McMullen,* 59 Mo. 256. And there must be the clearest proof of the fraudulent representations, and that the contract was founded on them. *Bryan v. Hitchcock,* 43 Mo. 531; *Langdon v. Green,* 49 Mo. 363, 368; *Holland v. Anderson,* 38 Mo. 59.

4. To avoid a sale for false representations, they must not only be false, and made with the intent to deceive and mislead, but the purchaser must have relied on them and been deceived and damaged in consequence thereof. *Holland v. Anderson,* 38 Mo. 55 ; *Morse v. Rathbun,* 49 Mo. 91 ;

*Cooley v. Rankin,* 11 Mo. 645 ; *Langdon v. Green.* 49 Mo. 363 ; *Bryan v. Hitchcock,* 43 Mo. 527.

5. If there is no fraud, and the vendee is in the undisturbed possession, defective title is no ground of relief. The defective title may ripen by time. There must be an eviction, or total failure of title, or such failure as will defeat the objects and purposes of the vendee. *Cooley v. Rankin,* 11 Mo. 645 ; *Connor v. Eddy,* 25 Mo. 72 ; *Mitchell v. McMullen,* 59 Mo. 252 ; *Barton's Admr. v. Rector,* 7 Mo. 528; *Edington v. Nix,* 49 Mo. 134.

6. The two forties are not essential in any way to the value of the farm, were never made use of by any of the owners of the farm, and are on the outskirts of the tract. At most the failure of title thereto, can only be a breach of the warranty *pro tanto,* for which redress can be sought in a suit on the deed. Merritt's estate is amply solvent. *Hart v. Handlin,* 43 Mo. 175.

*Wagner, Dyer & Emmons* for respondent.

1. There was no attempt to offer a good title to the land. Plaintiff was not bound to accept a quit-claim, or rely upon the statute of limitations to any of the land. He was entitled to an indefeasible title. Although there may have been no fraudulent intent on the part of Merritt in showing the wrong boundaries, and representing the water and timber as being on the land sold, still, plaintiff, on offering to deliver up the premises, as he does, is entitled to re-scission on the ground of mistake. This is not an action at law seeking to recover damages, but it is a bill asking equitable relief, where both parties may be restored to their former position. The distinction between the two classes of cases was pointed out in *Dunn v. White,* 63 Mo. 184. A substantial error between the parties, concerning the subject-matter of the contract destroys the consent necessary to its validity. 2 Kent Com., 471 ; and this principle has frequently been applied in equity in the rescission of executed

contracts for the sale of real estate. 1 Story's Eq., § 142; *Hitchcock v. Giddings*, 4 Price 135; *Mead v. Johnson*, 3 Conn. 597; *Bradley v. Chase*, 22 Me. 511; *Davis v. Heard*, 44 Miss. 51; *Armstead v. Hundley*, 7. Gratt. 64; *Smith v. Mitchell*, 6 Ga. 458; *Dale v. Rosevelt*, 5 Johns. Ch. 182; *Champlin v. Laytin*, 6 Paige 197; *Daniel v. Mitchell*, 1 Story 172; *Mason v. Crosby*, 1 Woodb. & Min. 352; *Glasscock v. Minor*, 11 Mo. 655; *Rawlins v. Wickham*, 3 D. & J. 317; *Hough v. Richardson*, 3 Story 659; *Doggett v. Emmerson*, 3 Story 733; Kerr on Fraud and Mistake, p. 60, Am. note; *Leyland v. Illingworth*, 2 D. F. & J. 253; *Pitts v. Cottingham*, 9 Porter 675; *Lewis v. McLemore*, 10 Yerg. 206; *Barton v. Rector*, 7 Mo. 528; *Duke of Norfolk v. Wortly*, 1 Camp. 337; *McFerron v. Taylor*, 3 Cranch 270.

NORTON, J.—This suit was instituted in 1872 in the circuit court of Warren county, to enjoin and restrain defendant, Jennings, as trustee, from selling certain lands hereinafter described, and also to rescind a contract whereby one Abel S. Merritt sold and conveyed to Thomas Key, the plaintiff, and Nicholas Key, the lands, the sale of which was sought to be enjoined.

The petition alleges that in 1867 plaintiff desired to purchase 1,200 or more acres of land, lying in a body, well watered and suitable for the purposes of a stock farm; that A. S. Merritt represented to him that he was the owner of such a farm in Warren county, containing 1,269 acres, that his title thereto was clear and perfect; that Merritt pointed out the same to plaintiff, and showed him the boundaries of the following land: 560 acres, being all of section 6, except the ne qr. of the ne qr. and the se qr. of the ne qr., in township 47, range 2 west; 100 acres, being the south half of the sw qr., and 40 acres, being the sw qr. of the se qr. of section 31, township 48, range 2 west; 80 acres, being the south half of the se qr.; 40 acres, being the nw qr. of the se qr.; 80 acres, being the east half of the sw qr. of section 36, township 48, range 3 west; 169

acres, being the ne qr. of section 1, township 47, range 3 west; 40 acres, being the sw qr. of the sw qr. of section 5, township 47, range 2; 80 acres, being the east half of the sw qr. of section 5, township 47, range 2 west, and 80 acres, being the east half of the nw qr. of section 8, township 47, range 2 west, containing in all 1,269 acres, more or less; that relying on the representations of said Merritt as to the location and contiguity of said land, and that there was upon it a never-failing stream of water, and his title thereto perfect, plaintiff, on the 7th of June, 1867, was induced to purchase the land at the price of $25,000—$1,000 of which was paid at the time, and the remainder to be paid as follows: $8,000 on the 1st of January, 1868; $8,000 in two years from June 7th, 1867, and $8,000 in four years, with interest at 6 per cent.; that, on the 3rd of July, 1867, the said Merritt and wife executed and delivered to plaintiff a deed of general warranty for what plaintiff supposed to be the above described land, and that plaintiff, to secure the notes given for the deferred payments, executed and delivered to defendant Jennings, as trustee, a deed of trust on the lands thus conveyed by Merritt; that 560 acres of the land described as being in section 6, T. 47, R. 2 west, is by said deed located in township 48, range 2 west, which places it six miles north of the balance of the tract, and that the lands conveyed by the deed do not lie in a body, but are separate and far apart, thus defeating the object of plaintiff in buying the same as a stock farm.

It is further alleged that Merritt was not the owner of the land in section 6, township 47, range 2, which he showed plaintiff and agreed to convey; that he never had title thereto and could not convey the same. It is also alleged that Merritt never had title to the north half of the sw qr. of the se qr. of section 31, township 48, range 2, nor to the south half of the sw qr. of section 5, and ne qr. of the sw qr. of section 5, township 47, range 2, nor to the south half of the se qr. of section 36, township 48, range 3 west, making in the aggregate

800 of the said 1,269 acres, to which Merritt had no title.

It is also alleged that said land was encumbered by mortgages, and that plaintiff had paid in the aggregate the sum of $13,179.38 on the notes given by him to Merritt; that plaintiff, by reason of the misrepresentations and fraud practiced by Merritt, had been deceived as to the location and title to said lands; that the never-failing stream of water, which was the controlling inducement for the purchase of said farm, is not located on any land to which Merritt had title, either in law or equity, and that such failure of title defeats the whole object of plaintiff's purchase of said land for a stock farm. It is further alleged that Jennings, the trustee, was about to sell the lands for the unpaid purchase money; that Merritt had since died, and after making the administratrix of his estate a party, it prays for an injunction restraining the trustee from enforcing a sale under the deed of trust; that the contract be rescinded, the notes given up and canceled, and for an account, &c.

The defendants, in their answer, deny each allegation in the petition. They deny that the 560 acres was described in Merritt's deed to plaintiff as in township 48, range 2, and aver that it was in township 47, range 2, and is part of the 1,269 acres sold to plaintiff; that Merritt was the owner in fee of it, and never owned, or pretended to own any land in township 48, range 2, and if it is so described in said deed, it is a misdescription and did not mislead plaintiff. It is further averred that the land sold to plaintiff was purchased by Merritt in 1863, of the assignees of Warren Stewart, and was known and sold to him as the Warren Stewart farm; that prior to said sale, said tract of 1269 acres (of which the said 560 acres was a part) had been owned, occupied and possessed by Stewart as a stock farm, and as his own property, for a period of not less than ten years, and that if, in the deed of said assignees to Merritt, there is a failure to describe the said 560 acres as being in

township 47, range 2, it is a mere clerical error; that said Stewart never owned 560 acres of like quality or description in township 48, range 2 west; that when Merritt purchased of said assignees, he took possession of all said land, and when Merritt conveyed to plaintiff the land known as the Warren Stewart farm, he conveyed by the same description, and put the plaintiff in possession thereof, and that he has remained in the undisputed and undisturbed possession ever since.

It is further averred that the 560 acres is described in the deed of Stewart to his assignees as being in township 47, range 2, and that the assignees, in their deed to Merritt, omitted the words in "township 47, range 2, west," and Merritt, in his deed to plaintiff, also omitted the same words; that by this omission, the title derived by plaintiff, through Merritt's deed, cannot be affected, inasmuch as the deed from the assignees to Merritt refers to the deed from Stewart to the assignees, in which the land is correctly described as in township 47, range 2. Defendants also tender in their answer a quit-claim deed from the assignees of Stewart, containing a correct description of the said 560 acres. It is further alleged that Merritt put plaintiff in possession of the land sold, and that he has been in peaceable and undisturbed possession thereof ever since, and that Merritt and those under whom he claimed had held and occupied the same exclusively and adversely as their own property, under color of title, for more than ten years prior to the sale of the land to plaintiff. It is also averred that the estate of said Merritt is perfectly solvent, and that plaintiff would be amply protected by the covenants of the deed, in the event of his eviction from any part of the premises.

The reply of plaintiff is a full denial of the answer. The decree of the court finds the issues for plaintiff, perpetuates the injunction, rescinds the contract, and enters judgment for plaintiff for the sum of $10,369.45, which is declared to be a special lien on said land. Motion for re-

view and new trial having been overruled, defendants bring the case here by appeal.

The court below found the following facts: That plaintiff purchased the land for the purposes of a stock farm; that Merritt represented that it was a good stock farm, and by his agent, Steel, pointed out to plaintiff the lands claimed by Merritt, and as part thereof, the se qr. of section 6, township 47, range 2, and south half of sw, section 5, township 47, range 2; that the latter tracts, comprising 120 acres, had on them the only living water, and the principal timber, without which, the farm was of little value as a stock farm, and that Merritt had no title to these tracts. The court also found that Merritt had no title to the ne qr. of sw qr., section 5, township 47, range 2, nor to the sw qr. of se qr., section 31, township 48, range 2. Upon the above findings the court based its decree perpetuating the injunction and rescinding the contract.

The only evidence tending to support the finding as to representations of Merritt that the farm was a good stock farm, and that he had a good title thereto, is to be found in what Nicholas Key, one of the vendees testified to, which is as follows: " We bought the land from A. S. Merritt; and my cousin, Thomas Key, and myself, paid him $1,000 down, in the beginning of June, 1867. I was present with Thomas Steel when we examined the farm. Steel had possession for Merritt. We went around over the farm, and examined it. Merritt told us Steel would show us the farm, which he accordingly did, taking a wagon and hauling us around the farm. Steel told us the stream of water belonged to Merritt; also the timber on the other side of the stream, towards Mr. Shelton's. I can't say how far this was from the house; can't say what section the water and timber is on. The water and timber was in our possession while we lived there. It was put into our possession by Merritt. The other side of the creek from the house is open land.

Thomas Key is now in possession of the timbered land and water, and of all the 1,269 acres." There is not only nothing in this evidence supporting the finding as to representations of Merritt, that the farm was a good stock farm, that the land was in a body, or that the timber and water was upon it, or that plaintiff relied upon them, but, on the contrary, it shows that plaintiff went to look at the land before purchasing, and inspected it for himself. If the representations made by Steel—to whom plaintiff had been referred by Merritt, as a person who would show plaintiff the farm, that the stream of water belonged to Merritt, also the timber on the other side of the stream towards Shelton's—are to be regarded as if made by Merritt himself, we think it is not sufficient, in view of the other evidence, to justify the finding and decree.

The evidence shows that the plaintiff received from Merritt, in 1867, a deed, with covenants of warranty for 1,269 acres of land in the aggregate; that he was put in possession of it, and has remained in the undisturbed possession of it ever since; that there is no person asserting title to the land on which the timber and water is located; that the south half of the sw qr. of section 5, and se qr. of the se qr. of section 6, township 47, range 2—the tracts containing the timber and water—was entered in 1852 by Stewart, in the name of one Thurmond, by locating upon it a land warrant, which Stewart had previously purchased of said Thurmond; that the land warrant was located in Thurmond's name, because Thurmond made no assignment at the time he sold it, and neither he nor Thurmond knew that an assignment was necessary to enable Stewart to locate it in his own name.

Shelton, a witness, testifies that he lived close to the Thurmond land, that the living water is on it on the se qr. of the se qr. of section 6, township 47, range 2; that there was no living water on the Stewart farm, except that on the Thurmond land; that Stewart made ponds on the land

while in possession; that the whole tract was known as the Stewart farm; that there were houses and barns and an orchard on it; that 500 acres or more, were under fence; that the improvements were about a quarter of a mile from the water; that Stewart had had possession of the farm and improvements since he first bought, and that he bought the first land between 1845 and 1850; that Merritt took possession about the time he bought from Stewart's assignees, and that Stewart or his assignees held possession up to that time; that the twelve hundred and odd acres are called and known as the Stewart farm, and that he never heard Stewart nor anybody else say that the Thurmond land was not Stewart's, but it was generally considered a part of the Stewart farm; that Stewart had principally made his improvements from the timber off the Thurmond land—the main timber of the Stewart farm being on that land.

Dyer, a witness, testified that since plaintiff bought, he had put in all about three and one-half miles of fencing; that there was then in cultivation between six hundren and one thousand acres; that Stewart had possession of the farm several years before he made his assignment for the benefit of his creditors, and claimed that he had from four to six hundred acres in cultivation.

On the part of defendant, Jennings, the trustee, testified that Merritt's estate was perfectly solvent, and the same fact was testified to by M. A. Wolf. P. P. Stewart testified that he was attorney for plaintiff; that he knew the Warren Stewart farm; knew how long Stewart had it in possession; that he had the whole tract in possession before the deed made by him to the assignees; he always claimed the farm as his own; he claimed the Thurmond land as his land; that he went to settle between them; about that time Thurmond left the country, perhaps four years before Stewart made his assignment; Thurmond did not claim the land; Stewart and Thurmond both told him that he, (Stewart,) had bought a land warrant

from Thurmond, for $150, and Stewart took the land warrant to St. Louis and located it on the Thurmond land in the name of J. Thurmond, for himself, Stewart; that they did not know that an assignment of the warrant was necessary; that Stewart sent him to Thurmond to try and make a settlement, and get him to accept the $150 for the land warrant, and get him, Thurmond, to give him a quit-claim deed, which he refused.

Hill testified that he had long lived in the county; knew the Stewart farm, and first knew Stewart in possession of it, in 1849 or 1850.

J. C. Dyer testified that he had lived adjoining the Stewart farm since 1849; that Stewart had the farm when he went there, and claimed to have 1300 acres in it, and had possession of it till he sold; that Thurmond lived in Montgomery county, and that he set up no claim to the Thurmond land.

Morse, testified that he was county surveyor in 1845 or 1846, and surveyed some of Warren Stewart's land; that he ran a line between the section corners of sections 5 and 6 and other lines, and established corners; that all the land was known as the Warren Stewart farm; he claimed 800 acres and 640 acres, less an 80 acre tract, making about 1300 acres.

The above evidence satisfactorily establishes the fact that the land conveyed to plaintiff, and spoken of in the evidence as the Thurmond land, on which was located the water and principal timber, although entered in the name of Thurmond, was in fact entered by Stewart, for himself, with a land warrant which he claimed to have bought of Thurmond, and which Thurmond admitted he sold him, and it was located in the name of Thurmond because it was not assigned, which neither Stewart nor Thurmond knew was necessary. The equitable title was thereby vested in Stewart, and the entry having been made in Thurmond's name, had no other effect

1. LAND ENTRIES: resulting trusts.

than to invest him with the mere legal title as trustee for Stewart.

Besides this, the evidence shows that after it was so entered, although Thurmond had knowledge of the fact, 2. ADVERSE POSSES- that Stewart claimed the land as his own, cut SION. the timber from it with which to improve his farm, he never set up any claim nor disputed Stewart's right to it. The evidence shows that from four to eight years previous to the assignment which Stewart made in 1860, conveying this land to assignees for the benefit of his creditors, Thurmond had actual knowledge that it was claimed and held adversely to him, by Stewart, as part of his farm; that it was so held by Stewart's assignees till 1863, when they sold it to Merritt, and was so held by Merritt till 1867, when he sold it to plaintiff, and has been so held by him ever since, thus establishing an adverse claim and holding with the knowledge of Thurmond, of between fifteen and twenty years, up to the time this suit was instituted in 1871. It has been held by this court, that when the adverse possession is such that it may be presumed that the true owner had knowledge of it, and acquiesced in it, he will be barred, provided it has continued the requisite length of time. If the indications of the claim and possession are so patent and so open, that if he remained in ignorance it must be his own fault, the like result will follow. *Draper v. Shoot,* 25 Mo. 197; *Fugate et al. v. Pierce,* 49 Mo. 441; *Musick v. Barney,* 49 Mo. 458. In the case before us, nothing is left for presumption, as the evidence shows actual knowledge on the part of Thurmond, of Stewart's claim and possession, and acquiescence in it. The evidence further shows that plaintiff was in quiet enjoyment, never having been disturbed in his possession, and that no claim had been set up by any person to so much of the Thurmond land as contained the timber and water.

The doctrine of this court has been that when a

party buys a tract of land, receives a deed with warranty,
**3. RESCISSION FOR MISREPRESENTATION.** and goes into possession, he cannot defend against a note given for the purchase money upon the mere ground of speculative defects in the title, unless there have been fraudulent and false representations made to him in regard to the title. A mistake of the vendor as to the validity of his title may easily occur, and his warranty deed is designed to protect the purchaser against such defects. It is a dangerous and delicate operation for a court to pass upon a title which nobody is asserting, and no one disputing. The vendee is in possession, and no one is controverting his title, except the vendee himself, and that for the purpose of avoiding the payment of the purchase money. *Mitchell v. McMullen*, 59 Mo. 252; *Connor v. Eddy*, 25 Mo. 75. A purchaser of land who has taken a conveyance, with covenants for title, and is in the undisputed possession, will not be relieved against the payment of the purchase money on the mere ground of defect of title, there being no fraud in the sale nor eviction. *Wheeler v. Standley*, 50 Mo. 10.

In the case we are considering, there has been no eviction from any of the land, constituting the inducement to the purchase. Do the representations made by Steel, as the agent of Merritt, even if he were mistaken, amount to such a fraud as to authorize a rescission of the contract? The representation was that Merritt owned the Thurmond land, on which was located the timber and water. It is not pretended that the representation was prompted by an actual fraudulent purpose. Steel, in making it, but reiterated what the evidence shows to have been the common understanding of the neighborhood in which the land was situated. It had been claimed and held adversely by Stewart and Merritt for more than ten years prior to that time, and this claim was acquiesced in by Thurmond, in whom plaintiff claims the legal title was vested.

It was held by this court in the case of *Langdon v.*

*Green*, 49 Mo. 363, that fraudulent misrepresentations and concealments by the vendor of land, as to the nature, quality, quantity, situation and title thereof, affecting the whole subject-matter of the contract, will entitle the vendee to relief; but such misrepresentations must be as to some material thing unknown to the vendee, either from not having examined or from want of opportunity to be informed, or from special confidence reposed in the vendor. And in such cases there should be the clearest proof of the fraudulent representations, and that they were made under such circumstances as showed that the contract was founded upon them. In such transactions parties must not neglect to use there own discretion and judgment. *Holland v. Anderson*, 38 Mo. 556; *Bryan v. Hitchcock*, 43 Mo. 527; *McFarland v. Carver*, 34 Mo. 195; *Edington v. Nix*, 49 Mo. 134; 1 Story Eq., Sec. 200.

In *Cooley v. Rankin*, 11 Mo. 643, it was said : " That the vendor is alleged to be guilty of fraud in representing that he had title, when he had none. If this be fraud, then every breach of warranty must be attended with fraud. The sufficiency of title to land may often depend upon questions of law, about which, the most learned may differ; and it would be strange, if men who had not made the law their profession, were exempt from errors in their opinions and representations on such a subject. There is no principle of equity which holds men responsible for such representations, if made in good faith."

In regard to the 560 acres in section 6, claimed by plaintiff to be described in Merritt's deed as being in township 48, range 2, it may be said that if thus described, it is clearly a misdescription, which the evidence fully establishes. That description would place it in Montgomery county, six miles north of the land actually shown to plaintiff and purchased by him. He was not misled by it, because he took possession under the deed of the 560 acres in section 6, township 47, range 2, on which was situated the dwelling houses, barns, fields and

4 RESCISSION FOR MISDESCRIPTION.

24

orchard, and has held the possession ever since, and prior to that time it had been in the possession of Stewart and his vendees, since 1845 and 1850. Equity deems that to be done which the parties intended to do. Admitting that the land was described as being in "township 48, range 2," still the plaintiff acquired such a title in equity to the land in township 47, range 2, as would bind the vendor, his heirs, voluntary grantees or purchasers with notice, as the evidence conclusively shows that was the land plaintiff bought, and that Merritt sold and intended to convey. *Welton v. Tizzard*, 15 Iowa 495; *Rhodes v. Outcalt*, 48 Mo. 367.

Besides this, defendants offered to and were ready to correct this mistake. This the plaintiff was unwilling to accept, although he had not been misled by it; and was then, and had been, from the time of his purchase, in the actual enjoyment of the very land he bought, but which, by clerical mistake, had not been fully described. This, in connection with the fact that plaintiff, although he discovered the alleged defects in the title soon after his purchase in 1867, rested at ease for a period of more than four years without taking any steps to rescind the contract, till after Merritt's death, evinces more of a desire on his part to sell back to Merritt's heirs the land he bought, at the price he bought it for, than to stand upon the equities of his case.

In the case where the purchaser has the undoubted right of rescission on discovery of the defect, he has his

1. RESCISSION MUST BE CLAIMED IN A REASONABE TIME. election to affirm and look to the vendor for compensation, or to disaffirm and ask a rescission, but he is bound to exercise that election at least within a reasonable time after the discovery of the defect. "He is not at liberty to hesitate and delay and wait, for a future of his own convenience or the market value of the property, before determining the question of affirmance or rescission." *Hart v. Handlin*, 43 Mo. 175; 1 Story Eq., Sec. 203.

Key v. Jennings.

The evidence shows that plaintiff, as early as July, 1867, knew that Dyer, Burgess and Leek were in possession of 80 acres of the land, and that in September, 1867, he knew of the alleged defect of title to the Thurmond land. He not only remained quiescent, during a period of four and a half years, without taking any steps to rescind, but on the contrary, after this knowledge came to him, he paid on his outstanding notes, given for the purchase money at various times from February, 1868, to March, 1870, sums aggregating $10,964.33, making in the meantime, three and one-half miles of fencing on the premises. No steps were taken till about one year after Merritt's death, when this suit was instituted. Till then all the acts of plaintiff look to an affirmance of the contract, and reliance on the covenants in the deed.

While we do not think the evidence justifies the finding of the court that Merritt had no title to the Thurmond 6. RESCISSION: partial failure of title. land, we think that it is sufficient to show that there was a failure of title as to the ne qr. of the sw qr., section 5, township 47, range 2, and the sw qr. of the se qr., section 31, township 48, range 2, aggregating 80 acres. It does not, however, appear that these tracts, which are on the outer sides of the whole tract, destroy its contiguity or that they constituted any special inducement to the purchase. The failure of title, in respect thereto, is not such as to authorize a rescission of the contract, as the substance of it is executed without them, and plaintiff's remedy is by way of compensation against Merritt's estate, which, according to the evidence, was perfectly solvent. *Hart v. Handlin*, 43 Mo. 175.

For the reasons stated the judgment will be reversed and the bill dismissed, in which the other judges concur.

REVERSED.