Heirs of Strickland vs. Heirs of McCormick.

HEIRS OF STRICKLAND vs. HEIRS OF McCORMICK.

1. A deed, although not acknowledged or recorded, being good under the common law as between the parties, is also good between the grantee and a mere trespasser.

2. Instructions which merely state abstract rules or principles of law, without any evidence to base them upon, are improper, and should not be given.

## ERROR to Jefferson Circuit Court.

### STATEMENT OF THE CASE.

This was an action of ejectment brought by the heirs of James McCormick, defendants here, against Tho. A. Strickland, who having died after suit was commenced, his heirs were brought in by *scire facias*.

At the December Term, 1848, a trial was had which resulted in a verdict for the plaintiffs, and the defendant has brought the case here, by writ of error to this court.

The evidence in the court below was as follows:—

The plaintiffs proved that they were the heirs of James McCormick. They then offered a, transcript from the office of the recorder of land titles of 'the recorded papers and proceedings of the different boards in relation to the claim of Michael Regan, on the Platten creek, now in Jefferson—formerly in St. Genevieve county. By the transcript, it appears that Jeduthan Kendall, as assignee of Michael Regan, gave notice to the Recorder of land titles for the territory of Louisiana, that he claimed as assignee 400 arpents of land situated on the south side of the Platten creek, joining a tract of Nathan Holms in the district of St. Genevieve, by virtue of a concession granted Michael Regan by Don Charles 'Dehault Delassus, which was misplaced, agreeable to Delassus' certificate, dated June 30th, 1808, signed Jeduthan Kendall. Then follows an order upon Governor Delassus, signed by Michael Regan, requesting h.m to let Jeduthan Kendall have the petition that was signed by Francis Valle, for a tract of land on the Platten which he had put into his hands at New Bourben. Then follows Delassus' certificate stating that the request or petition referred to by Michael Regan had been presented to him by Michael Regan, and attested by Francis Valle, dec'd, commandant; that he was deserving; that he had promised to grant his request; that he had lost the request or petition. This certificate is dated 19th of Aug., 1804.

Then follows a deed from Michael Regan to Jeduthan Kendall, dated July 8th, 1803, for the tract of land above, purporting to be executed and delivered in the presence of Peter O'Neal and James Hamilton. It further appears that the board met Dec. 6th, 1811. Their proceedings state that Jeduthan Kendall, assignee of Michael Regan, claiming 400 arpents of land situated on Platten creek, district of St. Genevieve, produced a certificate from Delassus, dated 9th of Aug. 1804, stating that he had had the petition and recommendation from the commandant at St. Genevieve, and had lost the same, which prevented his making a decree thereon—record of a transfer from Regan to claimant, dated 8th of July, 1803. It is their opinion that the claim ought not to be confirmed.

Then follows a notice headed "Jed. Kendall notice," directed to Frederick Bates, recorder of land titles for the territory of Missouri, directing him to take notice that he, as legal representative and assignee of Michael Regan, claimed 800 arpents of land situate on the Platten creek in the district of St. Genevieve under right derived from the French and Spanish governments, and the several laws of Congress. This paper is signed by Jed Kendall, assignee.

## Heirs of Strickland vs. Heirs of McCormick.

The recorder granted 640 acres, which was confirmed April 12th, 1814 The copy of the deed in this transcript was, on motion of the defendant, excluded from the jury.

The plaintiff then produced the original deed from Regan to Kendall, the copy of which in the transcript was excluded, and produced Benjamin Johnston to prove the hand-writing of Michael Regan, the grantor of Peter O'Neil, one of the subscribing witnesses; to the proof of hand-writing the defendant excepted. This original deed was endorsed—Rec'd in St. Genevieve Book D, page 277. Benj. Johnson then proved that he had gone to school to Regan, and had seen him write his name frequently, and believed the signature to the deed to be his writing. He stated that he knew O'Neil, the subscribing witness—that he lived by himself in Herculaneum, and made shoes for Maj. Kendall—was a weakly, decrepit man, about 40 or 50 years old—saw him last about forty years ago. He stated on cross-examination that he was between nine and eleven years old when he went to school to Regan—saw him write subsequently, when he was fifteen or sixteen years old—that he was administrator of Kendall, who died in 1824—that he found this deed among Kendall's papers, and other papers purporting to have been signed by Regan—had compared this signature with those on the other papers. He had also found two receipts for tuition, signed by Regan. He was asked if his knowledge of Regan's hand-writing did not arise from comparison of hands, and he said not, but from recollection of his hand-writing, and that he compared them through mere idle curiosity.

Wm. Moss was then called, who proved the signatures of Regan, O'Neil and Hamilton. He stated that when he lived at one John Sturges, Regan would frequently set copies for them to write by—that while high constable about 1800, he appointed O'Neil his deputy—that at that time O'Neil was some 50 years old when he left about 1809, and that the last he heard from him he was at the Hot Springs in Arkansas, where he learned he died. He also stated that he had seen Hamilton, the subscribing witness, write, and that the record, as to him, was true, and the signature genuine—that he, about the year 1809, went to the Rocky Mountains, and had been made chief among some of the Indian tribes—that he had since heard he was dead. At the time he left he was about thirty-five years of age—that Regan went to Natchez in 1808 or 9—had not seen him since. On his cross-examination, he stated that he had given the same statement at the time he gave his affidavit attached to the deed before Benj. Johnson, and concluded by saying that he was 86 years old 24th last May, at 4 o'clock in the morning.

Mr. Doolin was then examined, who stated that he had gone to school to O'Neil one quarter in 1803 or 4, and knew his signature from having seen him write, and that the signature of O'Neil upon the deed was genuine. He stated also that he had seen Regan write, and believed that his signature to the deed was genuine, though he was not so familiar with Regan's hand-writing as with O'Neil's. On his cross-examination, he stated that he had forgotten how to write, not having practiced since leaving school, and being required by the defendant's attorney to point out the signature of O'Neil he did it correctly by spelling the name as written. He stated that on his examination before Esquire Burns, he stated the same as here.

The plaintiff then proved who were the heirs of John Kendall, and produced their deed to Jas. McCormick, which was read. Also the plat survey of land, which showed that the land had been surveyed in 1818, but the survey had not been approved—that the present survey was completed in 1848, and was approved. In connexion with the survey the plaintiffs proved that the defendants were within the lines of the survey, at the commencement of the suit.

The defendants did not pretend to any title, but attacked the credibility of plaintiff's witnesses. They read the affiadvits of Messrs. Doolin & Moss attached to the deed just read in evidence. Doolin stated that he knew the signature of Peter O'Neil and had acquired a knowledge of his hand writing by going to school to him six months, and believed the signature to the deed to be his hand writing. Moss stated that he was well acquainted with O'Neil and James Hamilton; that O'Neil left this country about 1805, and went down the Mississippi

on a flat boat as far as Natchez, where he died, as he had heard; that Hamilton in the spring of 1805 went up the Missouri river with a company of trappers and hunters, and had heard that he crossed the Rocky Mountains, and there remained; that at the time of leaving, Hamilton was about 35 years of age and O'Neil about 45, and that he had no reason to believe that either of them was living. Esquire Burns stated that when he took Doolin's affidavit, he was questioned as to Bryan's sig.iature, and denied knowing the hand writing. Benj' Johnson, who had taken Wm Moss's affidavit stated that he had no recollection of having taken it, or what questions were put to Moss.

A witness then stated that he had known the land in controversy for the last thirty years; that when he first knew it there was an appearance of having been a field, but there was no fence, and it appeared to have been vacant for a long time; that he never saw any one in possession or claiming the possession prior to Thomas A. Strickland's going there some eight years ago.

The defendant then produced J. N. Littlejohn who stated that he was recorder in St. Genevieve; that he had examined the records of said county to see if he could find the deed from Regan to Kendall, endorsed "recorded St. Genevieve, Book D, page 277," recorded, and states that said deed is not recorded in said book and page, and is not recorded at all.

Here the defendant closed his case.

The plaintiff then proved that at the date the endorsement purports to have been made on the deed from Regan to Kendall, the land now sued for was in the limits of St. Genevieve county, as it then was; and then to rebut Littlejohn's evidence, he read the transcript of the record of the deed from Ryan to Kendall, from the office of the recorder of land titles. It is verbatim with the original already in evidence, and the recorder certifies that it is correctly copied from book D, page 227, in that office. The reading of this was excepted to by the defendants. For the same purpose the plaintiff offered the original order on Gov. Don Chs. Delassus in favor of Jed. Kendall signed by Michael Regan which is the same set out in the transcript from the recorder of land titles, first offered in evidence, having first proven the signature of Regan by Benj. Johnston. The defendants also excepted to this evidence.

The plaintiff asked but two instructions which were given, the substance of which are that if the jury find that Regan conveyed to Kendall, and Kendall's heirs conveyed to James McCormick, then plaintiffs are entitled to recover, and if the jury find for the plaintiffs they will further find monthly damages. These two instructions were objected and excepted to by the defendents. The defendants prayed eleven instructions, and the court gave all except the 2nd, 10th and 11th, which it refused, and modified the 7th by inserting the word "willully" after "have." The instructions refused the defendant are as follows:

2nd. The paper purporting to be a deed from Michael Regan to J. Kendall must be shown to have been properly executed, acknowledged and recorded before the jury can consider it a deed, or one link in the plaintiff's chain of title.

10th. That evidence of hand writing drawn from comparison of a particular signature with the signatures purporting to be those of the same parties, is worthless and wholly inadmissible, unless there is evidence that the signatures are genuine with which the particular signature has been compared.

11th. The law requires for a deed to be recorded according to law when not acknowledged; or proved by a subscribing witness, two witnesses to each signature.

The 7th instruction which was modified is as follows:

That if the jury believe from the evidence that those witnesses, or any of them, have made "willfully" different statements as to any material circumstance, upon their examination to-day, and any prior examination, they may reject their evidence.

The jury found a verdict for the plaintiffs. A motion for a new trial was made, which was overruled, and the case comes here by writ of error.

RYLAND, J., delivered the opinion of the court.

From the above very full and lucid statement of the facts in this case, it will become necessary for this court to look into the instructions given for the plaintiffs, and also those refused on the part of the defendants. We insert the first instruction given for the plaintiff. It is as follows: "If the jury shall find from the evidence, that Michael Regan made a deed to Jeduthan Kendall for the land in suit, and Kendall's heirs made a deed for the same to James McCormick, then the heirs of James McCormick, the plaintiffs in this action, are entitled to recover."

This is the only one of which the plaintiffs in error complain. The plaintiffs in error object to the instruction as being too general. We find from the evidence preserved in the bill of exceptions testimony amply sufficient to warrant this instruction. The land was originally granted to Regan; it was confirmed to him by the agency of his assignee, Jeduthan Kendall; Kendall was the claimant before the different boards of commissioners and recorder of land titles; Kendall filed the papers before the recorder of land titles; the confirmation was made through his exertions, by his acts, and must be for his benefit. But without noticing this point in the case, the instruction was properly given; the testimony justified the court in giving the instruction, and if the defendants complained of its generality, they might have narrowed it down, if they thought it necessary, by asking instructions for that purpose. We find no error therefore in any instructions given for the plaintiffs.

There now remains for us to notice those refused on the part of the defendants below.

The first is, "that the paper purporting to be a deed from Michael Regan to J. Kendall must be shown to have been properly executed, acknowledged and recorded before the jury can consider it a deed or one link in the plaintiffs chain of title." There is no error in refusing this instruction. The facts proved in this case in the court below, did not warrant this instruction. It was a good deed at common law, as between the parties thereto, acknowledgment and recording did not increase its force or validity, and the same doctrine prevails in a case between the grantee and the mere trespasser; had the defendants been subsequent purchasers without notice, then such a fact would warrant the court in giving the instruction; but there was no such proof in this case as required the court to give this instruction.

The 10th instruction embodies a correct general rule, and where the evidence will warrant it, such an instruction should have been given; but in this case there was no such evidence; the witness, Johnston,

expressly stated that he formed his opinion as to the genuineness from his knowledge of the handwriting—not from comparing it with any other signature ; there was no foundation for the asking of this instruction, and the merely stating abstract rules or principles of law in instructions, without any evidence to base them upon, is improper and erroneous.   There is nothing in the 11th instruction—it is not even relied on as error by the plaintiffs in error ; we therefore pass it by, and the addition by the court of the word "willfully" to the 7th instruction was not at all improper.   We have now disposed of the instructions and the supposed errors relied on by the plaintiffs in error.

We have examined the evidence in this case, and must say that the proof of a deed so old as the one from Regan to Kendall, has been made out most surprisingly ; there is scarcely any instrument of such age proved so forcibly and so satisfactorily in our courts.   The credibility of the witnesses making this proof was properly submitted to the jury, and they have found for the deed.   We feel no ways inclined to disturb their finding.   Upon the whole case, then, we find nothing requiring the interference of this court.

The judgment of the circuit court is therefore affirmed.