WRIGHT (SWAN v.). See Case No. 13,670.

## Case No. 18,096.
### WRIGHT v. TAYLOR.

[St. Louis Law News, Oct. 11, 1872; 2 Dill. 23.] [1]

Circuit Court, D. Missouri. Oct. Term, 1871.

EJECTMENT—MILITARY BOUNTY LANDS—SPECIAL LEGISLATION—CURATIVE STATUTES—DEEDS DEFECTIVELY ACKNOWLEDGED — CONSTRUCTION OF MISSOURI STATUTES.

1. In bestowing the bounty of the government upon its soldiers, congress had an undoubted right to shape that bounty as it deemed best, either by prescribing conditions or limiting the tenure and quality of the grant.

2. The act of congress of April 16, 1816 [3 Stat. 284], authorizing the designation of lands for military bounties, prohibited the alienation of said lands until after the issue of the patent therefor. Held, that a deed made in 1820 by the attorney of a patentee, under a power of attorney executed in February, 1816, the patent not having issued till 1819, is void ab initio, as being within the prohibition of the act.

3. The federal courts will follow the decision of the state supreme courts as to the admissibility in evidence of certified copies of deeds, without accounting for the absence of the originals, and as to the various curative acts concerning deeds improperly or defectively acknowledged, and as to the force and effect of the recording acts, whether those decisions are in accord with what are deemed sound rules of interpretation, or otherwise.

4. The inhibition of the Missouri constitution of 1865, forbidding the enactment of special laws giving effect to informal or invalid wills or deeds, &c., does not prevent the enactment of general curative statutes upon the subjects named, nor upon any of the other classes of subjects enumerated in that clause of the constitution. Such acts being general in the consti-

tutional sense, since they apply to a class, and not to individual cases; hence, the exceptional legislation as to military bounty lands in Missouri is not within the inhibition of the Missouri constitution.

5. Section 38, c. 109, Rev. St. Mo., pertaining to the admissibility in evidence of certified copies of deeds for military bounty lands, is not repealed by the act of February 27, 1868 (Sess. Acts 1868, p. 51), nor is the common-law mode of proving the execution of deeds thereby abrogated. Hence, a deed for such lands can be received in evidence where its execution is proved according to the common-law mode, in the same manner as any other deed not acknowledged or recorded properly, and it will be valid between the parties and those having actual notice and mere trespassers.

6. A certified copy from the recorder's office of such deed, when the original has been recorded and acknowledged, under section 35, c. 109, Rev. St. Mo. 1865, must be received in evidence upon proof of the loss or destruction of the original; and, if duly acknowledged according to the laws of Missouri, a certified copy is to be received on the same terms as other deeds with valid acknowledgments.

7. A deed improperly acknowledged in New York in 1820, according to the laws both of New York and Missouri at that time, and recorded in Missouri in 1822, is not such a deed as section 35 et seq. of chapter 109 of the Revised Statutes of 1865 affects; and a curative act passed in New York in 1824, to operate on such imperfect acknowledgments in that state, cannot act extraterritorially, and work curatively upon a deed to Missouri lands.

Ejectment, military bounty lands, &c. This was an action of ejectment [by David C. Wright against Samuel E. Taylor] to recover possession of certain land in Chariton county, Missouri, forming part of the track appropriated for military bounties. Plaintiff claimed under a patent for the land, granted to Nicholas Columbey, dated January 4, 1819, and on the trial offered in evidence said patent, together with a power of attorney by Columbey to William Russell, dated February 23, 1816, a deed from Columbey by said Russell, his attorney, to Moses Russell, dated June 1, 1819, and also subsequent deeds making a chain of title to plaintiff. Defendant objected to the admission of said power of attorney and the deed made thereunder, as being in violation of the acts of congress granting bounty lands, and therefore void under them. Objections were also taken to other deeds, offered in evidence, upon the ground that some of them were imperfectly acknowledged, and that others, being copies, could not be admitted; the statutory requirements governing the admission of copies not having been complied with. The court sustained the objections as to the power of attorney and the deed made thereunder, and rendered judgment for defendant.

Jewett & Bigger, for plaintiff.

Krum & Decker, for defendant.

Before TREAT and KREKEL, District Judges.

TREAT, District Judge. This and other cases concerning military bounty lands in Missouri, under the acts of congress granting

---

[1] [2 Dill. 23, contains only a partial report.]

lands to soldiers in the war of 1812, require an interpretation of said acts of congress, and of the statutes of Missouri with reference thereto.

By the act of May 6, 1812, c. 77, § 4 (2 Stat. 729), it was provided: "That no claim for the military land bounties aforesaid, shall be assignable or transferable in any manner whatever, until after a patent shall have been granted in the manner aforesaid. All sales, mortgages, contracts or agreements of any nature whatever, made prior thereto, for the purpose or with the intent of alienating, pledging or mortgaging any such claim, are hereby declared, and shall be held null and void; nor shall any tract of land granted, as aforesaid, be liable to be taken in execution, or sold, on account of any such sale, mortgage, contract or agreement, or on account of any debt contracted prior to the date of the patent, either by the person, originally entitled to the land or by his heirs or legal representatives, or by virtue of any process or suit at law, or judgment of the court against a person entitled to receive his patent aforesaid." Thus congress, in providing for the land bounties, annexed to them the qualities of inalienability for any of the enumerated causes, existing prior to the emanation of the patent. It had the power to grant the land on such terms as it might prescribe, and it prescribed such terms as it deemed important for the protection of its beneficiaries.

The second section of the act provided for the issue of warrants, and "that such warrants shall be issued only in the names of the persons thus entitled, and be by them or their representatives applied for within five years after the said persons shall have become entitled thereto; and the said warrants shall not be assignable or transferable in any manner whatever." This act referred to the prior act of December 24, 1811, c. 10 (2 Stat. 669), which contemplated a grant of 160 acres to each noncommissioned officer and soldier enlisted for the term of five years, said right to the grant to accrue when said person should be discharged with a certificate of faithful performance of duty,—the land "to be designated, surveyed and laid off at the public expense in such manner and upon such terms and conditions as may be provided by law." The act of January 11, 1812, c. 24, § 11 (2 Stat. 672) contains like provisions. Thus, at the honorable discharge of any one of those persons enlisted for five years, he was to be "allowed and paid," in addition to the money named, 160 acres of land, to be designated, &c., as above stated. The act of May 6, 1812, above quoted, requires the persons entitled thereto to apply within five years from their honorable discharge for the prescribed land warrant, and annexed the condition in section 2, that said warrant should not be transferable; and in section 4 that no claim should be transferable in any manner whatever until after the

patent issued, &c. It must also be carefully noted that as, by the prior acts, congress was thereafter to designate and prescribe the terms and conditions, those terms and conditions were in part fixed by the act of May 6, 1812,— one of which was inalienability, as already mentioned. That act of 1812 (section 1) designated the lands to be surveyed for those military bounty purposes, and no lands in that part of Missouri where the premises in dispute lie were among those so designated.

In aid of the foregoing acts, and in enlargement of the previous bounty system, congress passed the act of April 16, 1816, c. 55 (3 Stat. 286), whereby the president was to designate 2,000,000 acres of land in addition to those named in the act of 1811, subject to the conditions and terms of the last named act. Then, in section 5, as if to prevent all possible contrivances for alienating the county before the patent issued, congress provided: "That no transfer of land, granted in virtue of this or any other law, giving bounties of lands, &c., shall be valued, unless the contract or agreement therefor, or letter of attorney, giving power to sell or convey, shall have been executed after the patents shall be issued, and delivered to the persons entitled thereto." The prohibition was complete, under the act of 1812, against the transfer of the claim or of the warrant. But it is contended that a "letter of attorney," is not included within the terms used therein, viz. "sales, mortgages, contracts, or agreements." Whether that view be correct when the language and intent of the whole act is considered, it is not necessary to decide; for the lands included in that act, and designated for military bounties do not embrace the lands in controversy, and consequently the premises in question could not have been located or granted under it and the preceding acts. This tract of land, if the patent therefor issued under any act, must have been granted under the act of 1816.

The plaintiff claims under a deed executed in 1820, by William Russell, acting by virtue of a power of attorney from Columbey, the patentee. The power of attorney was executed in February, 1816, the land patent issued in 1819, the deed under the power of attorney was made by Russell in 1820, and by Russell's grantee back to Russell a few years thereafter. There could hardly be a plainer violation of the conditions prescribed by the act of congress under which this land must be claimed, if at all. It is apparent that the original letter of attorney was a mere contrivance to evade the act of 1812; but the act of 1816, taking effect two months subsequently, declared that any transfer of land to be granted thereafter should be void, if attempted to be transferred by such means. The land was then a part of the public domain, and had not been in any manner previously designated for bounties. The original act, promising a land bounty, provided that the boun-

ty grants should be on such terms and con·ditions as congress might thereafter prescribe; and congress, knowing what contrivances might be used to defeat the objects of the county, prescribed the needed conditions to save to the soldiers the benefits intended: First, that the warrant should not be transferred; second, the claim should not be transferred; third, no sale,. mortgage, contract or agreement for the purpose or with the intent of alienating, or pledging, or mortgaging any such claim should be valid; fourth, no tract of land granted under the county acts should be liable to be taken in execution or sold on account of any such sale, mortgage or agreement, etc.; and then, by the act of 1816, that all transfers of such land by means of any of such instruments or agreements or powers given before the patent issued, should be void. In the case before the court such a transfer was attempted, and it was void, ab initio. The plaintiff, claiming through and under that void act, takes nothing. Even if the acts prior to 1816 had not been passed, the plaintiff would be in no better position, although his power of attorney antedated the last named act; for the land in question was not appropriated for bounty purposes by any previous law. The grant, being under the act of 1816, was subject to its terms. If Russell had taken under the previous acts, the location of the land would have been elsewhere. In bestowing the bounty of the government upon its soldiers, congress had an undoubted right to shape that bounty as it deemed best, either by prescribing conditions or limiting the tenure and quality of the grant.

Many objections have been raised under the Missouri statutes as to the admissibility in evidence of certified copies of deeds, without accounting for the absence of the originals, and as to the various curative acts concerning deeds improperly or defectively acknowledged, and as to the force and effect of the recording acts. This court follows the decisions of the state supreme court upon such questions, whether those decisions are in accordance with what are deemed sound rules of interpretation or otherwise. The leading objects of the statutes concerning conveyances of land are to secure certainty, publicity, and good faith. As lands pass by deeds duly executed and delivered, it is desirable that there should be prescribed formalities observed, so as to insure due care and deliberation, and that they should be formally acknowledged before a competent officer, or duly proved. His certificate that the prescribed acts have been performed is designed to accompany the deed as authenticating its execution according to law. After execution and acknowledgment, it is to be recorded, so as to give notice to all concerned of the exact condition of the title, and thus close the avenues to fraud. But as the officers entrusted with those grave duties were often incompetent, and thereby the just

rights of grantees became jeoparded, the general assembly, in furtherance of justice, has, from time to time, passed curative acts, the effect of many of which has been to create confusion and uncertainty. Indeed the mischief of such legislation eventually became so great that the new constitution of the state inhibited it to some extent in these words: "The general assembly shall not pass special laws * * * giving effect to informal or invalid wills or deeds * * * but shall pass general laws providing, so far as it may deem necessary, for the cases enumerated." That inhibition does not go so far as to prevent the enactment of general curative statutes, upon the subjects named, nor upon any of the other classes of subjects enumerated in that clause of the constitution. Thus the exceptional legislation as to military bounty lands in this state, not only as to defective acknowledgments, but as to limitations, is held not to be unconstitutional.

The statutory limitation for military bounty lands granted under the early acts of congress is two years; for other lands ten years. So the act validating deeds for military bounty lands defectively acknowledged, and giving to the recording of the same greater effect than is given generally to deeds for other lands, are not within the constitutional prohibitions. If the limitation as to military bounty lands is unconstitutional because a special, and not a general, law, then the curative acts as to those lands would fall within the same rule, and the plaintiff be without the desired muniments of title. Those various acts are general in the constitutional sense; for they apply to a class, and not to individual cases. The fact that the district or county in which those lands are situated is not co-extensive with the state does not alter the rule.

Inasmuch as the general assembly had, by a series of acts during the last twenty years, given special and peculiar advantages to that class of claimants, validating their invalid acknowledgments, and changing for their benefit the ordinary rules of proving their titles; and inasmuch as by so doing the doors had been opened to increased litigation, and it may be to speculative dealings in such claims; and inasmuch as from failure to record conveyances, the lands could not be properly assessed, or, if assessed, the taxes due thereon were not paid, it was not improper to limit the time within which such special and unwonted favor should continue. The General Statutes of Missouri contemplate that all deeds shall be duly acknowledged, or proved, and certificates thereof be attached; that they shall then be recorded; and that, when so acknowledged or proved and duly certified, the original shall be read in evidence. Thus the certificate of acknowledgment, or of proof by the proper officer, is to be received as proving, prima facie, the due execution of the deed. The statutes contemplate the production of the original, in order that the prima facie case made by the certificate may in proper cases be rebutted.

This is important for protection against fraud. The officer recording deeds does not necessarily know either the handwriting of the grantor or of the witness, nor of the magistrate giving the certificate. He records what purports to be genuine; and if a certified copy from his office is to be conclusive evidence, or even prima facie, then the power to rebut is of no avail. But it may be that the original is lost, or "not within the power of the party wishing to use the same;" and hence the statute provides that in such cases certified copies may be read in evidence, where the party, or some one knowing the fact, makes oath to the loss, &c.

This provision would seem to require such oath to be made in every instance where a certified copy is to be used. But the supreme court of Missouri, in Barton v. Murrain, 27 Mo. 235, held that: (1) The exemplification of the patent certified by the commissioner of the general land office may properly be received in evidence without proof of the loss of the original (5 Sept. 242). (2) A certified copy of the deed may generally be read without the preliminary oath, if the original is presumed to be in the hands of a third person; and that such presumption, in the absence of suspicious circumstances, arises when a party claims under a warranty deed (for he is supposed not to hold deeds anterior to his own), also when he claims under a sheriff's deed, for the deeds anterior thereto are likely to remain with the execution debtor. The other cases referred to in the opinion seem not to dispense with the preliminary oath; but merely when the facts sworn to amount to sufficient proof of the deeds being beyond the power of the party to produce, viz.; that the grantee presumed to have the original is out of the state; or that the deed is in the hands of some one beyond the process of the court, or who cannot be compelled lawfully to produce it. The dicta in that opinion are far from giving a clear and authoritative exposition of the statute on all of the various points referred to. In Christy v. Kavanagh, 45 Mo. 376, and in Boyce's Trustees v. Mooney, 40 Mo. 105, the court seems inclined to narrow the rule dispensing with the oath; and, therefore, considering the plain language of the statute, parties should be held to the preliminary oath, except in the two cases of deeds anterior to a warranty and to a sheriff's deed. Certainly there is no hardship imposed upon a party claiming title through a series of conveyances, in compelling him to produce the original, or to make proper efforts to procure them, especially if his oath that they are lost, or beyond his power, as when in the hands of a non-resident, &c., who is not his own agent, servant, or bailee, is sufficient to let in a certified copy.

This court is not inclined to interpret away the statute further than the supreme court of the state has done; particularly, in consideration of the mischief to be guarded against. Hence, the rule must be held to be, that the preliminary oath is required in all cases except the two named, and also in those to be considered in connection with military bounty lands.

As to conveyances of military bounty lands, the statutes have for a long period of time permitted them to be recorded, though not acknowledged or proved, according to the laws of this state in force at the time whenever they were acknowledged or proved according to the laws of the place where executed, and such place was out of this state, and within the United States, and have validated such acknowledgments. The statutes also gave to the recording of such defectively acknowledged deeds the same force as if properly acknowledged, viz. such recording imparts notice. Copies of such instruments, duly certified by the recorder of the proper county, were made evidence on the same conditions as the original, upon proof of the loss or destruction of the original. Rev. St. 1865, p. 448, § 38. But the act of February 27, 1868 (Sess. Acts, p. 51), provides: "That section 36 of chapter 143 of the General Statutes of 1865, be, and the same is hereby amended so as to read as follows:—Section 36. Certified copies, or any other copies of such records as are contemplated in the next preceding section shall not be received in evidence until the execution of the original instrument or instruments from which the records were made shall have been duly proved according to law, unless the said records were made thirty years before the first day of January, 1867; in which case the certified copies may be read in evidence without proof of the execution of the originals." But the thirty-eighth section of chapter 109 of the General Statutes of 1865 pertains to military bounty lands, and section 36 of chapter 143 to lands generally; hence the 38th section of chapter 109 was not repealed by the act of 1868.

The supreme court of Missouri has held (Bishop v. Schneider, 46 Mo. 480) that generally, the recording of a deed imperfectly acknowledged does not impart notice to any one, unless recorded prior to the Revised Code of 1855. The exceptional cases as to military bounty lands, if said section 38 in the Code of 1865 is to be considered as repealed, would fall under the general rules concerning proof of deeds—would cease to be exceptional. As the amendatory act, however, is expressly confined to section 36 of chapter 143, what effect is to be given to section 38 of chapter 109, unrepealed, which permits certified copies from the record to be read upon proof of the loss or destruction of the original? The amendatory act requires the execution of the original instrument in the cases to which it refers to be proved according to law, before certified copies are received in evidence. But if the execution of the original is to be proved according to law, what law is meant? The common-law mode, as tolerated under certain early decisions in this state, permits the parties to produce the original and prove the signature of the grantor, and, in some

instances, of the witnesses to the deed, if there were any; and if such is the mode of proof contemplated, why say that after such proof is made of the original before the court, certified copies may be received in evidence? If, on the other hand, proof of the execution of the original is to be made before a competent officer under the statute, and his certificate is to be annexed, then such deeds can be received in evidence only when such course has been pursued, and copies thereof only when the deed with said certificate has been duly recorded. Hence the grave question: does that amendatory act abrogate the common-law mode of proof as recognized in Clardy v. Richardson, 24 Mo. 295? In that case it does not distinctly appear whether the deed in question was between the parties to the suit, or other parties, through whom plaintiff claimed title? If, between the parties to the suit, or those having actual notice, then that mode of proof was legitimate; for, by the Missouri statutes, a deed not acknowledged or recorded is valid between the parties thereto and those having actual notice thereof, according to the several decisions of the Missouri supreme court. 17 Mo. 561; 11 Mo. 642. Such seems to have been the uniform ruling of that court under the state statutes; and, if the act of 1868 was designed to work so radical a change, its language would have been more explicit. That court has held a deed unacknowledged and unrecorded not only valid between the parties and those having actual notice, but also against a naked trespasser, (14 Mo. 166); also, that the necessity of acknowledgment and registry, being unknown to the common law, arises only from such statutes in some states as make such requisites essential to the validity of deeds; of which states Missouri is not one. 17 Mo. 561. If, then, the act of 1868, does not exact acknowledgment or proof, according to the statutory requirements for registry, the question still recurs: Why, if the execution of the original is proved by the common-law mode, did the general assembly enact that only when such proof was made a certified copy should be received in evidence? It is evident that the common-law mode or statutory mode may be followed; and, if the latter, then the certified copy may be used. It may be that the framer of the act of 1868 intended also to furnish a substitute for section 38 of chapter 109, in the act of 1865, as well as of section 36 of chapter 143; and thus, as to all deeds, require formal statutory proofs, before a proper officer, with his certificate attached and the subsequent recording thereof, except where the deed, informally acknowledged, had been recorded the prescribed thirty years. If such were his purpose, the act fails to accomplish it. Section 38 of chapter 109, is still the law, and leaves the true rules as follows: A deed for military bounty lands can be received in evidence, where the execution of the original is proved according to the common-law modes, just as is the case with any other deed when not acknowledged or recorded properly, and it will be valid between the parties, and those having actual notice, and mere trespassers. A certified copy from the recorder's office, where the deed has been recorded and acknowledged under section 35, must be received in evidence upon proof of the loss or destruction of the original. If duly acknowledged according to the Missouri laws, a certified copy is to be received on the same terms as other deeds with valid acknowledgments.

In 46 Mo. 480, it is held generally that a deed recorded with a defective acknowledgment does not impart notice to any one, and that the act of 1865, re-enacting the act of 1855, as to recorded deeds not proved or acknowledged, or imperfectly proved or acknowledged, has no reference to any other deeds than those recorded prior to the taking effect of said act of 1855; consequently no such recording of imperfectly acknowledged deeds after that date imparts any notice whatever. Rev. Code 1865, p. 582, §§ 35, 36. The last cited sections have reference to deeds recorded under the act of 1855, other than deeds for military bounty lands; consequently section 38 of chapter 109 stands unaffected by the act of 1865. In 27 Mo. 235, the court holds that proof of loss or destruction of the original deeds to military bounty lands need not go to the extent of showing the actual destruction, but it will be sufficient to raise the presumption of loss that search was made in the proper place, and by the proper person, and that the deed cannot be found after due diligence in the search. And in 45 Mo. 376, it was held that the party should show that he has in good faith exhausted all the probable sources of information and means of discovery which the facts and circumstances are calculated to suggest, and which are at the same time within his reach. Each case, depending on its own circumstances, should show the extent and thoroughness of the search which the circumstances suggest. Thus that court has gradually restricted the rule, so that the mischief of letting in copies as indicated by the case in 27 Mo. 235, is reduced within narrow and safe limits, and accords with the views intimated by this court before said last decision was rendered.

The general provisions in sections 46 and 47, p. 731, in the Revised Code of 1855, concerning the recording of deeds not acknowledged, &c., certainly do not apply to deeds for military bounty lands, recorded after 1855, and consequently sections 35 and 36 of chapter 143 of the Revised Code of 1865 (page 582), which copy the sections in the act of 1855, do not apply to such deeds. Sections 35 and 36 of chapter 143 (1865) have reference only to deeds recorded before the act of 1855, while sections 35–38 of chapter 109 (1865) have reference to deeds recorded at

any time which fall within the description therein given. As by section 35, c. 109 (1865), deeds acknowledged or proved according to the laws of the state where executed (if for military bounty lands), are admitted to record and validated, it must, if they are not in conformity with Missouri laws at the time, be shown to have conformed to the laws of the place where executed at the time they were so acknowledged, in order to give to the certificate the force of proof. Hence a deed improperly acknowledged in New York in 1820, according to the laws both of New York and Missouri at that time, and recorded in Missouri in 1822, is not such a deed as sections 35 et seq. of chapter 109 of 1865 affects. A curative act passed in New York in 1824 to operate on such imperfect acknowledgments in that state cannot act extraterritorially and work curatively upon a deed to Missouri lands. The Missouri curative statutes alone apply to deeds for lands in Missouri. Under the territorial laws of Missouri, a notary public in Maryland was not at that time such an officer as could take acknowledgments of deeds for Missouri.

For a full elucidation of the Missouri Statutes as to imperfectly acknowledged deeds, reference must be had to the two classes of cases. Section 46 of chapter 62 (1855), page 731, and section 47 of the same chapter, reproduced in 1865 as sections 35 and 36 of chapter 143, page 581, refer to deeds not acknowledged or proved at all; also to those acknowledged and proved, but not according to the law in force at the time the same was done, which said deeds had been recorded prior to the act of 1855. Under the general law, the recording of such imperfectly acknowledged instruments would not impart notice to any one; so the general assembly enacted that the recording theretofore of such instruments should be taken out of the general rule, and be held to impart notice. Inasmuch as such effect was to be given to that class of instruments previously recorded, viz. imparting notice, it did not follow that copies of the record should be received in evidence on the same terms as copies of deeds previously recorded according to law. Hence copies of the defective instruments so recorded were not to be received in evidence until the execution of the original instrument was proved according to law. The same rule, as amended by the act of 1868, simply excepts from that stringent rule such of those deeds as were recorded prior to 1837. But the act concerning military bounty lands permits deeds therefor, which, though not acknowledged according to the Missouri law, were yet acknowledged according to the laws of the state where made, to be recorded, and gives to such acknowledgment the same effect as if rightly done originally. Hence, when the original of such a deed is produced, it stands on the same footing as other deeds validly acknowledged; but, if a certified copy of the record is offered, instead of its

being admissible upon the preliminary oath of the loss of the original, or of its being beyond the power of the party to produce it, as other valid deeds, the party offering it must first prove the loss or destruction of the original, or that it is beyond the power of the party to produce it. But in military bounty cases, there must be proof of the loss or destruction of the original, and not merely that it is beyond the power of the party, etc. But if deeds to military bounty lands were put on record prior to 1855, when they were not acknowledged according to the laws of Missouri, or of the state where made, then they fall under the provision of section 36, c. 143 (1865), and the amendatory act of 1868, and the execution of the original must be proved, unless recorded before 1837. Hence the only exception to military bounty deeds is, that when they were acknowledged according to the laws of the state where made, though not according to the Missouri laws at the time in force, the originals can be received in evidence, or certified copies, upon proof of the loss or destruction of the original, unless they were recorded prior to 1837.

All imperfectly acknowledged deeds recorded prior to the act of 1855 may be proved according to the common-law mode in open court; or, if proved according to the statutory mode, before a competent officer, with his certified proof attached, and then duly recorded, a certified copy can be used. Either course is admissible. If the latter be taken, then the properly proved deed according to the statutory mode would place it on the same footing as any other deed properly acknowledged and proved and recorded, with this advantage only, that the recording of the deed originally would have imparted notice from that time, instead of only from the time of recording the properly proved instrument. Those imperfectly acknowledged deeds, in other words, though recorded, and thereby notice of their existence was given, remained to be proved just if they never had been recorded; if military bounty lands, falling under sections 35–38 of chapter 109 (1865); if not military bounty lands, under the general provisions of the statute. Notice imparted by the curative act of 1855 affected notice alone, and not the rules of evidence or proof of execution. The deeds remained to be proved, and could not be proved by producing a certified copy of a record, which, on itself, contained nothing even purporting to be proof of the execution of the original.

It appears that the supreme court of Missouri holds that a husband, by virtue of his life estate, may maintain or defend in ejectment for the possession of his wife's realty. 4 Mo. 106; 22 Mo. 22; 38 Mo. 439.

[2] [As to curative acts and defective certificates of acknowledgment of deeds, see Randall v. Kreiger, Case No. 11,554; Morton v. Smith, Id. 9,867.]

[2] [From 2 Dill. 23.]