LYNDE v. WILLIAMS *et al., Plaintiffs in Error.*

1. **Linn County Probate Court**: EXECUTION SALES. The general law respecting execution sales of real estate, (1 Wag. Stat., § 42, p. 609,) requires them to be made on some day during the term of the circuit court of the county where such real estate is situated. The act creating the probate court of Linn county, (Sess. Acts of 1853, § 6, p. 392,) provides that "all sales and executions shall be governed and conducted in like manner as sales now are, or may hereafter be, in the circuit court in this State," and by section 7, requires that deeds of sheriffs, making sales under executions issued from that court, shall be acknowledged before the probate judge in probate term time; *Held*, that these provisions do not impliedly and necessarily confer a power to sell at any other time than the general law directs; and that a sale of real estate under execution during the session of the Linn probate court, and not during the session of the circuit court, was a nullity. Following *Mers v. Bell*, 45 Mo. 333.

2. ———: ———: DESCENTS AND DISTRIBUTIONS. Where one dies leaving a widow and child, and the child dies without issue, the mother surviving, she becomes the heir of the child. 1 Wag. Stat., § 1, p. 529.

3. ———: ADVERSE POSSESSION. The actual, exclusive, open, continuous and adverse possession of a part of a tract of land for ten years by one claiming title to the whole tract, under deeds purporting to convey the same, will vest in such claimant the absolute title to the whole tract.

4. ———: ———: MUST BE PROVEN, CANNOT BE PRESUMED. If such possession, however, be commenced by *disseizin*, such person, until the lapse of ten years, continues to be a mere *disseizor*, and his *disseizin* will not be presumed to continue until the contrary appears; his possession for the requisite period must be proven, and will not be presumed.

5. **Lands and Land Titles**: ADVERSE POSSESSION, WHAT NOT SUFFICIENT PROOF OF. The proof of an act done on the premises, which merely indicates an *intention* to hold the land, such as the posting on the land of a notice to the owner of such intention, is not sufficient proof of such possession.

*Error to Linn Circuit Court.*—HON. G. D. BURGESS, Judge.

This action was brought against Williams, the occupant, and afterwards Erskine, his landlord, was, by agreement, made a party defendant. The deeds relied on by

plaintiff, as color of title, to make out title by adverse possession under the statute of limitations, were the following: From the register of lands to A. H. Donahoe, of date January 2nd, 1856, for the east half of section 36; from A. H. Donahoe to Stephen Donahoe, of date February 10th, 1857, for the same; from Stephen Donahoe to William S. Donahoe, of date May 24th, 1858, for the same; from W. S. Donahoe to Hamilton DeGraw, of date —— day of ——, 1867, for the northeast quarter of section 36; from F. H. DeGraw to Hamilton DeGraw, of date November 6th, 1865, for the same; from H. DeGraw to John P. Jones, of date November 22nd, 1867, for the same; from John P. Jones to plaintiff, of date July 25th, 1868; from Otho Reams to H. DeGraw of all his improvements upon the land, of February 10th, 1866, and a lease back to said Reams from DeGraw of same date for the northeast quarter, commencing March 1st, 1866, and running to March 1st, 1867; a lease from H. DeGraw of same to J. A. Arbuthnot, of date August 3rd, 1866, running to March 1869; a conveyance from Jesse H. Brewer of all his interest in the same, together with his improvements, of date of July 5th, 1867. In connection with these conveyances, testimony as to the possession was given, tending to prove that in 1857 or 1858, William Brewer, who owned a farm of eighty acres adjoining on the west, by mistake, fenced over on the land claimed by Donahoe, and, altogether, took in about twenty acres of this land, which was broken up by him; that, after the mistake was discovered, he consented to hold the same as the tenant of W. S. Donahoe, and did so hold until 1864, when he turned over the place to his son, Jesse Brewer, who, in 1865, sold the improvements to Otho Reams, who took possession and raised a crop on the land; that the old Donahoe house on the southeast quarter was occupied in 1866 by Jesse Brewer as tenant of Donahoe; and that Donahoe's possession had run from 1858, through his tenants and those claiming under him, to 1868

or 1869. The subjoined plat will assist in understanding plaintiff's case.

NORTH.

```
Northeast Quarter Section 36.

The 100 acres in dispute.

Brewer's im-
provements run-   South line of
                  the 100 acres.

ning over on N.   South 60 acres
E quar. sec. 36,  not in dispute.
made in 1857. 20
acres.

Center of Section 36.

The old Donahoe house and
improvements occupied by Jesse
Brewer, and built in 1857.

Brewer Farm.

Southeast qr. Section 36.
```

WEST.　　EAST.

East hf. sec. 36.　320 acres

SOUTH.

The defendant claimed title under Jonathan Floyd, the original patentee. He offered and read in evidence a power of attorney by Thomas Floyd, therein named as sole heir at law of Jonathan, to E. W. Cecil, of date September 9th, 1858; a deed from Thomas Floyd, by Cecil, as attorney in fact, to defendant, Erskine, of August 22nd, 1859. He read depositions showing that Jonathan Floyd died in 1823, leaving a widow and son; that the son died unmarried without issue, leaving his mother surviving him; that his mother married a Mr. Neal and moved to Kentucky. Defendant also claimed to have acquired the Donahoe title and possession through a sheriff's deed, of

date September 1st, 1862, to N. D. Stephenson, on a judg-
ment of May 5th, 1862, in the probate court of Linn
county, against W. S. Donahoe, upon which the whole east
half of section 36 was levied on and sold as his property
for $3.00. This deed recited that such sale was made " at
the court house of my said county of Linn, during the
session of the probate court of Linn county, at the Sep-
tember term thereof, for the year 1862." Defendant also
read a deed from N. D. Stephenson, of said land to the de-
fendant, Erskine, of date December 16th, 1872. He also
offered testimony to show that when possession was taken
by him in 1870, the land was vacant and without any im-
provements upon it.

The court, on plaintiff's motion, gave the following
instructions:

1.  The jury are instructed that if they believe from
the evidence that defendants only claim to connect them-
selves with the title of Jonathan Floyd, patentee, by and
through a deed from Thomas Floyd; and further believe
from the evidence that said Jonathan Floyd died about the
year 1822, leaving a widow and one son, and that the son
died intestate, without children, leaving his mother sur-
viving, and that defendants do not claim title from either
the mother (now Mrs. Neal) or her son, then the jury are
instructed that defendants have failed to connect them-
selves with the title of the patentee, Jonathan Floyd.

2.  The jury are instructed that the defendants have
not shown any legal paper title to the land in controversy,
unless the jury believe from the evidence that Thomas
Floyd was the son or only heir at law of Jonathan Floyd,
the patentee; and if the jury believe that Donahoe, by his
tenant, Brewer, had the first actual possession of part of
said land, claiming the whole tract under color of title
thereto, and that plaintiff succeeded to his possession, and
that such possession was not abandoned, then the jury are
bound to find for the plaintiff.

3.  The jury are instructed that the deed read in evi-

dence from the heirs of Stephen Donahoe to W. S. Dona-hoe, of date 24th day of May, 1858, the conveyance from Jesse Brewer, Otho Reams and W. S. Donahoe to DeGraw, and the conveyance from DeGraw to John P. Jones, and from John P. Jones to the plaintiff, are sufficient color of title upon which to predicate an adverse possession under the statute of limitation, and if they believe from the evi-dence that the plaintiff, and those under whom he claims, have had the actual, exclusive, open, continuous and adverse possession as against the defendants, of any part of the tract in question, claiming the whole tract under such color of title for ten years prior to the time that de-fendant Williams got into possession on the —— day of August, 1870, then such color of title and adverse posses-sion would vest the absolute title in the plaintiff, and the jury are bound to find their verdict for the plaintiff.

4. The jury are instructed that a possession once shown to exist is presumed to continue until the contrary is shown, and they are further instructed that to constitute possession, it was not necessary that the plaintiff, or those under whom he claims, should live on the land or keep any person thereon, but that any acts done on the premises indicating an intention to hold the land, is sufficient.

Defendants asked the following instructions:

1. The jury are instructed that it is admitted that the land in suit was patented to Jonathan Floyd by the United States, and defendants have shown a perfect chain of title from one Thomas Floyd, claiming to be an heir of paten-tee, and if the jury believe that said Thomas Floyd is the only heir at law of Jonathan Floyd, they are bound to find for defendants, unless plaintiff, or those under whom he claims, were in the actual, open, adverse and continuous and exclusive possession of said premises, under color of title for ten years, next before defendant Erskine, and those under whom he claims, may have been in possession thereof under claim and color of title to said premises.

2. If the jury believe from the evidence that Wm.

Brewer occupied the land as tenant of Donahoe, and he turned the possession over to his son, and he to Reams, then Reams was tenant of Donahoe, and no sale by him (Reams) to DeGraw, could prejudice Donahoe's right to the possession, and this right of Donahoe's possession having been transferred to defendant Erskine, by color of title from Donahoe, they are bound to find for the defendants.

3.  Before the jury can find that plaintiff, and those under whom he claims title, were in the actual, open, notorious, continuous and adverse possession of the premises here sued for, for ten years or more before the possession was taken by defendant Erskine, they must find that such possession was continuous as well as adverse, and if they further find that there was a break in such possession, or that said premises were not in the possession of any one for one or more years during that time, that the same was not continuous.

4.  The burden of proof in this case devolves upon the plaintiff, and unless said plaintiff has established the issues in this case in his favor by a preponderance of the evidence, and to the satisfaction of the jury, they will find their verdict for the defendants.

5.  If the jury believe that in 1858 William Brewer took and held possession of the lands in dispute as the tenant of W. S. Donahoe, from that time up to about 1864, and then turned said possession over to Reams, and that Reams kept and held said possession up to February 10th, 1866, and then transferred the same to Hamilton DeGraw, then the jury are instructed that the sheriff's deed to Stephenson transferred and conveyed said premises to said Stephenson, and the deed from said Stephenson to defendant Erskine transferred and conveyed said possession to said defendant, and they will find for defendants.

6.  The jury are instructed that if they believe from the evidence that W. S. Donahoe was, by himself or tenants, in possession of the land in controversy up to the 10th day of February, 1866, and that prior to that date the

same had been sold under execution against him, and a sheriff's deed made to the purchaser, and the purchaser conveyed to Erskine, one of the defendants, such conveyance conveyed to Erskine the constructive possession and a right to the occupancy as against Donahoe; and if they further find that after that date DeGraw, under whom plaintiff claims, bought Donahoe's possession and held the premises, then they are bound to find for defendants, unless they find from the evidence that Donahoe and Erskine had wholly abandoned the possession prior to February 10th, 1866.

7. It appearing from the evidence that defendants entered on said land under color of title in August, 1870, and have since remained in possession, then plaintiff cannot recover, although he, or those under whom he claims, may have been in possession of said land in 1866 and 1867 under color of title, unless the jury further find that plaintiff, and those under whom he claims, had been in the adverse possession of said land for ten years before defendant took possession, and that such possession had not been abandoned.

8. The jury are instructed that it is admitted in evidence that the land in question was patented to Jonathan Floyd, and that he died, leaving a widow, who is his heir at law, and plaintiff having shown no legal title to the land, the jury must find for the defendants, unless they believe from the evidence that plaintiff, or those under whom he claims, held the land adversely to the heir of Floyd for more than ten years before defendant's entry.

9. If the jury believe from the evidence that Wm. Brewer occupied the land as tenant of Donahoe, and that he turned over the possession to his son, and he to Reams, then Reams was tenant of Donahoe, and no sale by him (Reams) to DeGraw, could prejudice Donahoe's right to the possession, and this right of possession having been transferred to defendant Erskine, through the sheriff's deed on

execution against Donahoe, they are bound to find for defendants.

The court gave the instructions numbered 1, 3 and 4, and refused to give those numbered 2, 5, 6, 7, 8 and 9, to which defendants duly excepted. The court, on its own motion, gave the following instruction:

"If the jury believe from the evidence that William Brewer occupied the land as tenant of Donahoe, and he turned the possession over to his son, and he to Reams, then Reams was tenant of Donahoe, and no sale by Reams to DeGraw could prejudice Donahoe's right to the possession, and if Donahoe's possession was transferred to defendant Erskine, by color of title from Donahoe, they are bound to find for defendants."

The jury found for the plaintiff.

*W. H. Brownlee* and *C. D. Dobson* for plaintiffs in error.

*S. P. Huston* for defendants in error.

SHERWOOD, C. J.—Ejectment for 100 acres of land, a plat of which is hereto annexed. The suit was brought September 2nd, 1870.

We do not regard Erskine as having acquired any interest in, or right of possession to, the land by reason of his purchase from N. D. Stephenson, who bought Wm. S. Donahoe's interest in the east half of section 36, at sheriff's sale in 1862; and for this reason: The general law respecting execution sales, requires them to be made at the court house door on some day during the term of the circuit court of the county, &c. 1 Wag. Stat., § 42, p. 609; *Jackson v. Magruder*, 51 Mo. 55; *Merchants Bank v. Evans*, Id. 335; *McClurg v. Dollarhide*, Id. 347; *Bruce v. Leary*, 55 Mo. 431. In *Mers v. Bell*, 45 Mo. 333, the sale under execution took place during the session of the circuit court of Cass county and it was held that such sale was properly made, notwithstanding the execu-

*1. LINN COUNTY PROBATE COURT: execution sales.*

tion issued from the common pleas court of Cass county.
There was no express authority conferred by the act creat-
ing that court to have execution sales take place during
the sessions of that court, and it was held that the con-
cluding words of section 7 of that act, (laws 1867, p. 86,)
providing that: " Judgments rendered by said common
pleas court shall be liens on all real estate situated in said
Cass county, and with like effect as judgments of the cir-
cuit court, and shall be proceeded upon to execution sale
in the same manner as is prescribed by law for judgments
in the circuit court," did not impliedly confer authority
that execution sales might occur during the session of the
common pleas court. The sale to Stephenson took place
during the session of the probate court of Linn county.
The act creating that court, (laws 1853, p. 392,) by the
sixth section, provides that : " All sales and executions
shall be governed and conducted in like manner as sales
now are, or may hereafter be, in the circuit court in this
State."

It will be observed that the words just quoted are of
similar import to those contained in the section quoted in
*Mers v. Bell, supra*, words which in that case, were, as just
seen, held not to admit of a construction authorizing the
occurrence of sales under executions, otherwise than as
prescribed by the general law. Nor do we conceive that
section 7 of the act establishing the Linn probate court,
requiring that deeds of sheriffs, making sales under execu-
tions issued from that court, should be acknowledged be-
fore the probate judge in probate term time, would impliedly
and necessarily confer a power to sell at any other time than
the general law directs. And unless the words of the 7th
section would of necessity bear that sort of construction,
we must, under the authority of *Mers v. Bell, supra*, hold
the sale which occurred during the session of the Linn
probate court a nullity. These remarks uphold the court
below in its refusal to instruct in reference to that sale, as
prayed by defendants.

Nor are we of opinion that the court erred in giving the first and second instructions on behalf of the plaintiff. 2. ——: ——: It was shown by the evidence that Thomas Floyd was the nephew of Jonathan Floyd, the admitted patentee of the land; that Jonathan Floyd died in 1823, (his father and mother having predeceased him,) leaving at his death a widow and son; that the son died without issue, his mother surviving him. It is quite plain, under our statute of descents and distributions, that the mother became the heir of her son, 1 Wag. Stat., § 1, p. 529, and that in consequence thereof, Thomas Floyd derived no title from the patentee.

*descents and distributions.*

Aside from mere verbal criticism, plaintiff's third instruction was unquestionably correct, asserting, as it does, a doctrine so often enunciated by this court —*Key v. Jennings*, 66 Mo. 356, and cases cited; and there was evidence tending to show adverse possession for the requisite period on the part of those under whom plaintiff claims; and this was sufficient basis to maintain ejectment on, notwithstanding that after the expiry of the statutory period, those under whom plaintiff claims had abandoned the premises, and they were found thus abandoned in 1870, when Williams, as tenant for Erskine, took possession.

*3. ——: adverse possession,*

But we cannot give sanction to the fourth instruction on behalf of plaintiff. If he and those under whom he claims were possessed of the premises in controversy for a sufficient length of time, as set out in plaintiff's third instruction, this conferred the title on plaintiff. It is, however, evident that such title, if acquired, was the result of *disseizin*, and that plaintiff and others from whom he derives title, were, until the lapse of the statutory period mere *disseizors*. It is true that the existence of many things once proven to exist, are presumed to continue; but we do not regard that rule of presumption as applicable to the present instance. The books indeed lay down that a *seizin* once proved, or admit-

*4. ——. ——: must be proven, cannot be presumed.*

24—68

ted, is presumed to continue until a *disseizin* is proved, 1 Greenl. Ev., § 42; but it certainly cannot be true that if you establish the existence of a *disseizin* at one period its continuance must, therefore, be presumed until the contrary appear. Under such a ruling and theory of the law, the transfer of the title of the true owner to a mere *disseizor*, would, it must be confessed, be greatly facilitated; and the real owner, in consequence of a few months adverse possession at some remote and forgotten period, would frequently be presumed out of his estate. The plaintiff's sole reliance for recovery was such a possession of the premises in dispute, and for the requisite period, as described in his third instruction, nothing short of a proof of such a possession would answer, and the burden of proof was on his shoulders to fully and affirmatively establish this. *Brown v. King*, 5 Met. 173. He could not, therefore, eke out the necessary facts, which alone would entitle him to recover, by presumptions.

Nor can we approve the concluding portion of the fourth instruction now under discussion, for yet another reason: That portion declares "that any acts done on the premises indicating an intention to hold the land is sufficient." This language is altogether too loose. Under such an instruction, the mere posting of a notice on the land notifying the owner that the notifier intended to hold the land, would be sufficient. Our court has gone a great way in respect to what constitutes adverse possession, but certainly never so far as to sanction such an instruction. Had the evidence as to adverse possession on the part of plaintiffs been conclusive, we might have not reversed the judgment, because of the fourth instruction, but have contented ourselves with condemning the errors which it contains; as it is, however, we cannot certainly say but that the jury were greatly influenced by its erroneous teachings in rendering their verdict. We, therefore, reverse the judgment and remand the cause. All concur. REVERSED.

5. LANDS AND LAND TITLES: adverse possession, what not sufficient proof of.