BIRD *v.* McCLELLAND STUMPF & PELZER BRICK MANUF'G Co. *et al.*

(*Circuit Court, W. D. Missouri, W. D.* March, 1891.)

1. WRITS—SERVICE BY PUBLICATION—AFFIDAVIT—TAX-TITLE.

　　In an action to enforce a tax-bill for a street assessment, where service was made on defendant by publication, the fact that the affidavit for publication was made by a third person, without disclosing whether he was agent or attorney for plaintiff, does not invalidate a judgment in plaintiff's favor, nor affect the title of the purchaser at the sale.

2. TAX-TITLE—JUDGMENT—CLERICAL ERRORS.

　　Where four separate suits on four separate tax-bills under the same grading contract were simultaneously brought against defendant, a clerical error by the clerk of the court in transposing the court numbers in two of the cases on entering judgment, so that they do not correspond with the numbers given in the orders and proofs of publication, does not invalidate the judgment.

3. SAME—ACKNOWLEDGMENT OF DEED.

　　A tax-deed showed on its face that the judgment ordering the sale was rendered in, and the execution issued out of, the special law and equity court of Jackson county, Mo. The act creating this court makes the clerk of the circuit court of that county *ex officio* clerk of the special court. *Held,* that a certificate of acknowledgment of the deed, wherein the officer taking it described himself as "clerk of the circuit court and *ex officio* clerk of the special law and equity court," and which then recited that during a session of "the court aforesaid" the sheriff acknowledged the deed, would be presumed to have been taken in the special court, as there was no necessity for the certificate to have recited anything about the clerk's being *ex officio* clerk of that court had the acknowledgment been taken in the circuit court.

4. SAME.

　　Gen. St. Mo. 1865, c. 160, § 55, requires deeds of land sold at judicial sales to be acknowledged before the "clerk of the circuit court" of the county in which the land is situated. *Held,* that Laws Mo. 1873. pp. 195, 197, which created the special law and equity court of Jackson county, and which designated the places at which land should be sold under execution issued out of that court, and which provided that such sales should be governed by the general statutes regulating execution sales, conferred on the special court jurisdiction and control over such proceedings from the rendition of judgment to its consummation by execution, sale, and deed; and that, in view of the fact that sheriff's deeds, involving a large amount of property sold, during a period of 15 years, under judgments of the special court, have been constantly acknowledged before the clerk of that court, a tax-deed, so acknowledged, will not be held void because of the failure to take the acknowledgment before the clerk of the circuit court. Explaining *Mers* v. *Bell,* 45 Mo. 333, and *Lynde* v. *Williams,* 68 Mo. 360.

At Law.

*L. F. Bird,* pro se.

*C. O. Tichenor* and *Chase & Powell,* for defendants.

PHILIPS, J. This is an action of ejectment to recover possession of lot 28 in block 3 of Old Town, in Kansas City, Mo. Henry Welland is the common source of title. Plaintiff's title comes by mesne conveyances under said Henry Welland. The admitted value of the property is about

$6,000, and is occupied by the said manufacturing company as a brick-yard, and has been so occupied and used by them since the early part of 1882.

The first deed under which the defendants claim title is predicated of a judgment rendered in the special law and equity court of Jackson county against the said Welland for the enforcement of a lien against said lot on a tax-bill for grading a street. Judgment was rendered September 24, 1873, and at the sale thereof Thomas Tackett became the purchaser, and received a deed in form therefor from the sheriff on June 6, 1874. Service in said action was obtained by order of publication against the defendant Welland on the ground of non-residence. Objection is made to the sufficiency of the affidavit on which the order of publication was made. The affidavit was made by James Gibson, without disclosing whether he was attorney or agent for plaintiff, or stating other special matter qualifying him to make the affidavit for plaintiff. This is claimed by plaintiff to invalidate the affidavit. It is sufficient to say that a similar objection, and under a similar statute, authorizing orders of publication, was overruled by the supreme court of the state in *Gilkeson* v. *Knight*, 71 Mo. 403, and reaffirmed in *Johnson* v. *Gilkeson*, 81 Mo. 55.

It is next objected to this deed that there is a fatal variance between the deed and the property described in the order of publication and in the judgment. The record shows that on June 4, 1873, said Tackett instituted four suits in said court against said Welland on four separate tax-bills against four separate lots, alleged to be owned by defendant, and brought under the same grading contract. These cases in the orders of publication were numbered, consecutively, 184, 185, 186, and 187. The publication as to lot 28 in block 3 was numbered 186, in which the amount of tax-bill sued on was $8.26. The record shows that on the 3d day of September, 1873, proof of publication was made in all those cases separately, and on the 24th of said month separate judgments were rendered in the four cases. From some cause, evidently a mere clerical error of the clerk, the numbers of the cases as entered in the judgment against lot 28, block 3, was numbered 187, instead of 186, as in the order of publication. Does this discrepancy invalidate the judgment? The number given the case is a mere device of the clerk as a convenient means of tracing the case. It is not part of the judgment any more that the number of a municipal bond or other negotiable instrument is a part of the bond or note. *Wylie* v. *Railway Co.*, 41 Fed. Rep. 625, *loc. cit.* Viewed as a means of identification, taking the whole record together, it is hardly possible that a person of ordinary prudence or observation would be misled by this variance. Separate orders of publication and proofs of publication were made in the cases. In contemplation of law, the defendant was in court when the judgment was rendered. Judgments were likewise rendered on the same day in all the cases. It is perfectly apparent on the face of the whole record that the numbers 186 and 187 were accidently transposed, as the judgment in 186 is against the same lot 28, and for the same debt as in the order

of publication in 187; and the judgment in 187 is against the same lot, (28,) and for the same debt as in the order of publication in 186. This mere clerical error does not affect the judgment of foreclosure against lot 28.

A more serious objection to this deed arises on the uncertainty of the acknowledgment, which is as follows:

"*State of Missouri, Jackson County*—ss.: I, Wallace Laws, clerk of the circuit court and *ex officio* clerk of the special law and equity court within and for the county aforesaid, do hereby certify that C. B. L. Boothe, sheriff of Jackson county, whose name is subscribed to the foregoing deed as maker thereof, this day, and during the session of the court aforesaid, personally appeared in open court, and acknowledged the same to be his voluntary act and deed for the uses and purposes therein expressed, as is shown by the records of said court," etc.

It is not easy for the court to say from this certificate in which of the two named courts the acknowledgment was made. The officer taking the certificate described himself as clerk of two courts, and then recites that "during a session of the court aforesaid personally appeared in open court." Two courts are first named, and the expression, "the court aforesaid," applies to only one court. The certificate of acknowledgment is essential to the validity of a sheriff's deed under the state statute, and it has been repeatedly held that the imperfection of the certificate, which is of substance, cannot be helped by any extraneous evidence,—not even by the aid of the record of the court in which the acknowledgment was taken. *Samuels* v. *Shelton*, 48 Mo. 444; *McClure* v. *McClurg*, 53 Mo. 173. While this is true, there is another rule for ascertaining the application of the language of such certificate, and this is, reference may be had to the entire instrument. It is permissible to look at the deed itself in order to ascertain the import of the terms of the certificate. *Samuels* v. *Shelton, supra,* 448. By reference to the deed in this case it appears from its recitations that the judgment was rendered in, and the execution issued from, the special law and equity court of Jackson county. By reference to the act creating this court we find that the clerk of the circuit court of Jackson county was made *ex officio* clerk of the special law and equity court. If the deed had been acknowledged in the circuit court, there would have been no occasion for the certificate to have recited anything about the clerk being *ex officio* clerk of the law and equity court. So that it is most reasonable to infer from the whole record of the deed and the certificate that by the use of the words "and *ex officio* clerk of the special law and equity court" the clear intendment is that the acknowledgment was taken in the latter court, and this corresponds with the real fact.

The objection then is made that such deed could only have been acknowledged in the circuit court of Jackson county. This objection is formidable, in view of the holding of the supreme court of the state on parallel statutes. The general statute then in force, (section 55, c. 160, Gen. St. 1865,) and which is yet the law, required that "every officer executing any deed for lands," etc., "sold under execution, shall ac-

knowledge the same before the circuit court of the county in which the estate is situated." Section 56 provided "that the clerk of such court shall indorse upon such deed a certificate of the acknowledgment or proof, with the names of the parties to the deed, and the description of the property thereby conveyed." This statute covers all execution sales of real estate, and, of consequence, applies to sales under judgments of the special law and equity court, unless some other statute excepted deeds made on execution sales under its judgments from the operation of the general statute. The act (Laws Mo. 1873, p. 195) creating such special court contains no such exception. While it conferred jurisdiction on this court over the subject-matter of the special tax suits, to render judgments and enforce them by sales, there was no provision made for such sales being conducted at said court. To remedy this defect the legislature afterwards passed a supplementary act, (Id. p. 197,) which provided in section 2 that—

"All sales of real estate made under or by authority of an execution or executions, issuing under any judgment of said court, shall be made at Kansas City upon all executions issuing at that city; and, upon all executions issuing upon all judgments rendered at Independence, such sale shall be made at the court-house door at Independence, during the session of said court at Independence, and in all respects shall be governed by the general statutes regulating sales under execution."

There is contained in this section no express provision respecting the acknowledgment of the deed. But it certainly was the intention of the legislature by this supplemental act to place judgments, execution, and sales thereunder on the same footing with like proceedings in the circuit court, and to confer on the special court jurisdiction and control over such proceedings, from the rendition of judgment to its consummation by process of execution, sale, and deed. There would be little question in my mind that such was its effect but for the holdings of the supreme court of the state on a somewhat parallel statute. In *Mers* v. *Bell*, 45 Mo. 333, the case was that the legislature had created the common pleas of Cass county, with jurisdiction to render judgments binding real estate, and providing that such judgments should have like effect as judgments of the circuit court, and should be proceeded upon to execution and sale in the same manner as prescribed by law for judgments in the circuit court. It was held that, as there was no provision in the act authorizing sales under executions issued therefrom to be conducted at and during the session of the common pleas court, the sale should conform to the general provisions of the statute at large regulating judicial sales, which required that they should be conducted at and during the sitting of the circuit court of the county in which the real estate is situated. This case was followed in *Lynde* v. *Williams*, 68 Mo. 360. In that case the sale was made under judgment rendered in the probate court of Linn county. The act creating said probate court provided, in the sixth section, that "all sales on executions shall be governed and conducted in like manner as sales are now or may hereafter be in the circuit court in this state." It was again held that this act did not authorize sales un-

der executions otherwise than as prescribed by the general law. This holding is the more pronounced in view of the fact that the seventh section of the act authorized the sheriff to make the acknowledgment of deeds under execution sales before said probate court.

It is apparent from the language of the learned judge who wrote this last opinion that his conclusion was somewhat constrained by that reached in *Mers* v. *Bell, supra;* and it is to be observed in the *Mers Case* that Judge WAGNER was led somewhat to the conclusion reached by him by reason of the fact that as circuit courts in the country districts of the state, as then conducted, attracted to their sessions large numbers of people. and it was generally expected that such occasions would secure a larger number of bidders, it must have been in the mind of the legislature that such sales should not be conducted at other town than the county-seat, as in the case of the common pleas court of Cass county, as the town of Pleasant Hill, where the common pleas court sat, was near the line of the county, and remote from the county-seat. This reason could have no application to the case under consideration, because it is a well-known public fact that the sessions of the special law and equity court of Jackson county were held in the same court-house as the circuit court, and it was also a court of as much, if not more, public attendance than the circuit court. It is also a fact of such publicity that this court, sitting within the same city as that of the special law and equity court, should take notice of it that sales under judgments rendered in said court were not only conducted while it was in session, but that deeds made by the sheriff on such sales were acknowledged before that court; that a large amount of property was thus sold and conveyed, and the validity of these titles, extending over a period of 15 years, has stood unchallenged, so far as litigation in respect to such acknowledgments is concerned. Under such condition of affairs, it seems to me that to now hold such acknowledgments to be void upon so technical ground as that applied by the supreme court in the cases above considered would be most hurtful to the public interests, in disturbing titles to real estate which have long reposed, and the values of which in the progress and growth of the city have so materially enhanced. We must therefore decline in this case to follow what might seem to be the logic of the holdings of the state supreme court on equivalent statutes under different conditions, on grounds of public policy and judicial conservatism.

As it follows that the deed under the tax-sale in question is valid, it is unnecessary to express any opinion as to the validity of the subsequent proceedings under the tax-sales and the deeds made thereon, as the effect of the deed under the special judgment enforcing the lien of the grading tax swept away the titles under which the plaintiff claims. It results that the issues are found for the defendant. Judgment accordingly.